George D. HOLLAND, Appellant,

v.

H. B. LESESNE, Appellee.

No. 13813.

Court of Civil Appeals of Texas.

San Antonio.

Oct. 11, 1961.

Rehearing Denied Nov. 8, 1961.

Trueheart, McMillan, Russell & Westbrook, San Antonio, for appellant.

Baskin, Casseb & Gilliland, San Antonio, Gordon L. Hollon, Boerne, for appellee.

BARROW, Justice.

This appeal involves two causes which were consolidated and tried together. One is a suit by appellee against appellant to impress a constructive trust upon a certain tract of land situated in Bandera County, Texas, fronting on Medina Lake and known as "Frosty Point", and the other, a suit for actual and exemplary damages by appellee against appellant by reason of the conver-

sion of certain personal property. The first suit is Cause No. F–119781 on the trial court docket, and the second, Cause No. F–128875 on said docket. Upon a jury verdict on special issues, judgment was rendered adjudging appellee to be the owner in fee simple of an undivided one-half interest in and to the subject land, and divesting appellant of any title or claim to said one-half interest. Judgment was also rendered, in favor of appellee and against appellant, for actual damages in the sum of $1,660.50, exemplary damages in the sum of $1500.00 and costs in the sum of $236.70; and requiring the sum of $6,250.00, less the recovery against appellant, to be paid by appellee into the registry of the court, for the benefit of appellant as the purchase price of the property vested in appellee. The first suit above mentioned will hereafter be called "The Land Suit", and the second suit, "The Damage Suit." Appellant will be called Holland and appellee, Lesesne.

The pertinent facts in general are as follows: For some years prior to the transactions involved herein, Holland and Lesesne, as well as their respective families, had been warm personal friends. They desired to secure a place for week-end outings. They visited and inspected some lake front sites with the plan to purchase one jointly, but found no suitable place. Holland mentioned that he had a friend who owned lake front property and might be willing to lease it. They looked at the property and then jointly leased it for one year. There were two houses, as well as some other improvements on the property. The two houses were in bad state of repair, and the lease was made upon the following terms: Holland and Lesesne were to pay to the owner, Walter Liese, $100.00 each, and were to repair each of the houses, so as to put them in livable condition. Holland and Lesesne were to, and did, share equally in these expenses. Holland occupied the east house, and Lesesne occupied the west house. The property so leased is that involved in this suit. It is known as "Frosty Point" and will be so referred to herein. Shortly after it was leased, Holland and Lesesne discussed buying the property jointly, and in December, 1957 or early in January, 1958, entered into an agreement to purchase it. Under the agreement, title was to be taken in the names of both parties. They were to share equally in the payment of the purchase price, and the property was to be owned by the parties jointly in equal shares. They agreed that Holland should conduct the negotiations with Liese, however, at the time, Holland had already made arrangements to buy the property. Thereafter, on February 15, 1958, Holland presented to Lesesne an earnest money contract to sign, covering the purchase of the subject property, and for the first time revealed to him that he proposed to exchange property and services for the subject property. The property which Holland proposed to trade was a piece of real estate, a lot in San Antonio, at that time owned jointly by himself and one Ted Mahone. Holland proposed to value the lot at $10,500.00, and was to build a swimming pool for Liese which was valued at $2,000.00, making a total of $12,500.00, for Frosty Point, one-half thereof to be paid by Lesesne to Holland. Lesesne agreed to these terms and signed the contract which Holland retained. However, thereafter, Lesesne, according to his testimony, recalled having overheard a conversation between Holland and Mahone regarding the valuation of the San Antonio lot in the deal between them, wherein Holland was acquiring Mahone's interest in said lot, and the figure at which they valued it was far below the sum of $10,500.00, at which Holland valued the lot to him. The next day he called Holland and told him to hold up the deed until he could talk to him. The following day, February 16, they discussed the matter, and, according to Lesesne's testimony, after much discussion and argument, Holland agreed to reduce the figure on the lot from $10,500.00 to $9,700.00, making the price for Frosty Point, $11,700.00, rather than $12,500.00. Holland, however testified that Lesesne became outraged, called him a crook and said he would have nothing more to do with him. On the

following day February 17, 1958, Holland entered into a contract with the seller, Liese, to purchase the property in his own name. Thereafter, he and Lesesne continued to discuss how they would partition the property between themselves, as to how and where the division lines were to be drawn, and the matter of the use of a well on the premises, also the adjustment of the cost of utilities, etc., until about the month of June, 1958, when Holland, for the first time, told Lesesne that he did not intend to keep the agreement, that he had bought the property for himself in his own name. Between the last two above mentioned dates, Lesesne made permanent and valuable improvements on the part of the land he was to get, and had no knowledge of any intended breach of their original agreement. Thereafter, Lesesne continued to occupy the Lesesne house on the property, until he was forcefully dispossessed by Holland in May, 1959.

Inasmuch as there are two separate causes of action involved herein, we shall consider them separately.

### The Land Suit.

■ By his first point, Holland contends that his motions for instructed verdict, judgment, and judgment n. o. v., should have been granted for the reasons that the agreement was not in writing and no fiduciary relationship was shown. The point must be overruled. The jury finding, together with the undisputed evidence, is sufficient to establish a constructive trust and to impress the trust upon the title to the property. Since the decision of the Supreme Court in FitzGerald v. Hull, 150 Tex. 39, 237 S.W.2d 256, 261, it has been well established that such strict and technical relationships as trustee and cestui que trust, principal and agent, attorney and client, are not indispensable, but that such informal relationships, such as moral, social, domestic, or merely personal ones, where one person trusts in and relies upon another, are sufficient. The Supreme Court, quoting from 54 Am.Jur., §§ 225 and 226, stated the rule as follows:

" 'While a confidential or fiduciary relationship does not in itself give rise to a constructive trust, an abuse of confidence rendering the acquisition or retention of property by one person unconscionable against another suffices generally to ground equitable relief in the form of the declaration and enforcement of a constructive trust, *and the courts are careful not to limit the rule or the scope of its application by a narrow definition of fiduciary or confidential relationships protected by it. An abuse of confidence within the rule may be an abuse of either a technical fiduciary relationship or of an informal relationship where one person trusts in and relies upon another, whether the relation is a moral, social, domestic, or merely personal one.*' Sec. 225, 54 Am.Jur., 'Trusts', p. 173. (Emphasis added)

" 'The abuse of a confidential relationship by acquiring property through the employment of knowledge or interest obtained in such relationship constitutes a sufficient basis for equitable relief in the form of the declaration and enforcement of a constructive trust in respect of such property and in favor of the person wronged. The relationships of trustee and cestui que trust, principal and agent, client and attorney, and employer and employee, are striking, *but far from exclusive, examples of confidential relationships within the meaning of this rule.* * *'

Sec. 226, Idem, pp. 173–174" (Emphasis by Supreme Court.)

■ In the case at bar, the undisputed evidence shows that during all the relevant period of time an unusually close personal friendly and confidential relationship existed between the parties and their families. They visited each other regularly, they dined together, and they vacationed together.

By his second point, Holland contends that the court erred in refusing to submit his Special Issue No. 1, inquiring whether or not appellant had repudiated any agreement for the joint purchase of the land, and in refusing to submit his Special Issue No. 2, inquiring whether or not appellee acquiesced in such repudiation, and in refusing to submit appellant's Special Issue No. 7, inquiring whether or not appellee, after learning of the repudiation, abandoned his rights under the contract.

In his third point, Holland contends that the court erred in refusing to submit his Special Issue No. 3, inquiring whether or not any agreement for the purchase of land was mutually rescinded by appellee and appellant, and in refusing appellant leave to file a trial amendment alleging such mutual rescission.

■ These points are overruled. In the first place, the points are multifarious and need not be considered. Rule 418, Texas Rules of Civil Procedure; Smith v. Brown Express, Tex.Civ.App., 343 S.W.2d 550. Secondly, the requested issues used only the words, "repudiated", "acquiesced in", "abandoned" and "rescinded", and did not include in the issues the factual elements necessary to be included therein, nor did Holland, in connection therewith, submit any substantially correct definition or explanation of the terms. Therefore, he cannot complain of the court's failure to give such issues. Rule 279, T.R.C.P. The opinion in Hough v. Grapotte, 127 Tex. 144, 90 S.W.2d 1090, cited by Holland, supports the above statement of the rule. Moreover, as for the third point, the question of whether or not a trial amendment is allowed is entirely within the discretion of the trial court. No abuse of that discretion has been shown in this case.

By his fourth point, Holland contends that the court erred in submitting, over his objection, "Question No. 1" inquiring whether or not the parties agreed that Holland would negotiate with the landowner for the joint purchase of the land, in submitting "Question No. 2" inquiring whether or not Holland informed Lesesne that the owner had agreed to sell for $12,500.00, in submitting "Question No. 3" inquiring whether or not Lesesne and Holland agreed to jointly purchase the land for a consideration of $12,500.00, and in submitting "Question No. 4" inquiring whether or not each of the parties were to acquire an undivided one-half interest in the land, because these questions were not supported by the allegations of Lesesne's pleadings.

■ In connection with these points, Holland argues that the jury in answer to "Question No. 5" found that there was no agreement between the parties that the value of the Broadway lot was to be fixed at $9,700.00 as part of the purchase price to be paid for the Frosty Point property, and rejected Lesesne's theory of the case, therefore, judgment should have been rendered in his favor. He contends that the jury having found, in response to Question No. 5, that the parties did not agree that the value of the Broadway lot should be fixed at $9,700.00 precluded recovery by plaintiff. We do not agree. This jury finding, when applied to the evidence was simply a finding that after the parties agreed on the $12,500.00 price, they did not make an agreement reducing the price, and was against Lesesne on his contention that the price was reduced.

■ By his fifth point, Holland contends that the court erred in permitting Lesesne to file a trial amendment after the verdict of the jury had been returned, received, and filed. The trial amendment alleged, in substance, that plaintiff tenders into court one-half the purchase price of the land, and alleged the price to be $11,700.00, or, in the alternative, $12,500.00.

We agree with Holland that the court erred in permitting the filing of the trial amendment. Rule 67, T.R.C.P. However, such error is harmless. We have examined plaintiff's original petition, and have reached the conclusion that it is sufficient without

the aid of the trial amendment. We observe that Points Nos. 4 and 5 are multifarious and not subject to consideration by this Court. Nevertheless, we will dispose of the points on their merits.

■■ We have examined plaintiff's trial petition and find that, while it is somewhat vague and indefinite, it does raise the issues submitted to the jury. While it alleges that the parties *at that time* valued the trade-in property and services at $11,700.00, the pleading, when construed as a whole, alleges that Holland was delegated and entrusted to do the negotiating, and that each party would pay or contribute one-half of the purchase price, whatever it was. The pleading further alleges, that plaintiff tenders one-half of the purchase price, whatever it was. No special exceptions were urged to the pleading. Plaintiff's petition contained a statement sufficient to give fair notice of the cause of action. Rule 47, T.R.C.P. During the trial, Holland at no time objected to the evidence raising Questions Nos. 1, 2, 3 and 4, on the ground of the absence or deficiency of pleading. Holland did not object to the submission of any of said issues on the ground that they were not raised by the pleadings, as required by Rule 274, T.R.C.P. Furthermore, Holland in his motion for new trial did not assign as error the submission of any of such issues on the ground of lack of pleading. Rule 324, T.R. C.P. The appellant cannot complain for the first time on appeal.

■ By Holland's sixth and last point in the land suit, he contends that the court erred in submitting, over his objection, Question No. 7, which inquired whether or not "after such agreement, if any, (inquired about in Question No. 3), and in reliance thereon the Plaintiff, Hugh Lesesne, made substantial and valuable improvements on the house that he was occupying on the property in question," because the issue is multifarious in that two ultimate issues are submitted therein. The point is overruled.

■ The making of valuable or substantial improvements in reliance on the agreement is not necessary to the establishment of a constructive trust. The issues as submitted could have been answered in the negative and such finding would not have barred a recovery by plaintiff. Fitz-Gerald v. Hull, supra. The making of improvements on the land is at most an evidentiary fact tending to prove reliance by plaintiff on defendant to keep the agreement. The issue submitted is immaterial, and, therefore, any error in its submission has not been shown to have injured appellant, and is therefore harmless. Rule 434, T.R.C.P.

### The Damage Suit

The evidence on the issue of conversion is undisputed. On or about May 5, 1959, when the Lesesne house on Frosty Point, was occupied by and under the exclusive control of Lesesne, as it had been during all the time relevant to this controversy, and at a time when Lesesne, claiming to be a joint owner of the land, had filed the above land suit and was in peaceful possession of said house, Holland went to said house and unlocked it and removed all of Lesesne's personal belongings therefrom and moved them to his storage yard in San Antonio, Texas. At the same time, he removed Lesesne's boat and boating equipment to his own home in San Antonio. The next day he stored the contents of the house at Scobey's warehouse in San Antonio and stored the boat and boating equipment at the Biltwell Boat Company in San Antonio. All of this was done without Lesesne's knowledge, permission or consent. Holland then wrote Lesesne a letter telling him where his property was and that he could get it, although it had been stored in Holland's name. Lesesne sued for the value of his property rather than for the recovery of the property.

■ The trial court submitted two issues thereon, inquiring in Question No. 8, what was the market value of the property taken from the Lesesne house, and in Ques-

tion No. 9, what was the market value of the boat and boating equipment taken from the premises by defendant. Thus, it is apparent that the trial court concluded that the evidence conclusively established a conversion of the property. In this the trial court was correct.

■ A conversion has been defined as any distinct act of dominion wrongfully exerted over another's property, in denial of his right or inconsistent with it. The test is whether the wrongdoer has exercised a dominion over the property in exclusion or in defiance of the plaintiff's rights. Gulf, C. & S. F. Ry. Co. v. Buckholts State Bank, (Tex.Com.App., opinion approved), 270 S. W. 1008.

Holland makes the following contentions: (1) That the court should have submitted the issue as to whether there was a conversion of the property. (2) That the court should have submitted his requested issue inquiring whether or not Holland made reasonable arrangements for the personal property of Lesesne to be subject to his disposition and control. (3) That judgment should have been rendered in his favor because as a matter of law the evidence did not show a conversion. (4) That the court should have granted him leave to file a trial amendment alleging plaintiff's failure to mitigate his damages; and (5) the court should have submitted his requested issue inquiring if plaintiff failed to mitigate his damages. We do not agree.

The facts were undisputed; they either constituted a conversion or they did not. We are of the opinion that they did. Sinclair v. Stanley, 64 Tex. 67, 69 Tex. 718, 7 S.W. 511; Bradley v. McKinzie, Tex.Civ. App., 226 S.W.2d 458; Hicks Rubber Co. Distributors v. Stacy, Tex.Civ.App., 133 S. W.2d 249; Stidham v. Lewis, Tex.Civ.App., 23 S.W.2d 851; Henderson v. Beggs, Tex. Civ.App., 207 S.W. 565; Crawford v. Thomason, 53 Tex.Civ.App. 561, 117 S.W. 181; Hofschulte v. Panhandle Hardware Co., Tex.Civ.App., 50 S.W. 608.

■ It is well settled that the owner of converted property has an option of bringing an action either for its specific recovery or for its market value. 42 Tex.Jur. 543, Trover and Conversion, § 32. It is also well settled that where property has been converted the owner is generally under no obligation to take it back upon a tender by the wrongdoer. Hence, such a tender will not preclude the recovery of damages for the conversion. 42 Tex.Jur. 539, Trover and Conversion, § 28. Since Lesesne elected to sue for the value of the property, the measure of damages in such case being the market value of the property at the time and place of conversion, there could be no mitigation thereof. The contentions of tender of the property and mitigation of damages must be overruled. The trial court's action in submitting to the jury only the damage issue was correct.

■ We sustain Holland's contention that the court erred in granting judgment for exemplary damages in the sum of $1,500.00, for the reason that there was no finding that the conversion was either malicious or willful. A finding that the conversion was either malicious or willfully done is essential to a recovery of exemplary or punitive damages. This was plaintiff's issue, and the issue is waived in the absence of a request by plaintiff for the submission thereof. Rule 279, T.R.C.P. No such finding having been made or requested by Lesesne, the recovery of exemplary damages cannot stand.

The judgment is reformed by deducting the recovery of exemplary damages by Lesesne in the sum of $1,500.00. The judgment of the trial court adjudging H. B. Lesesne to be the owner of an undivided one-half interest in the land described in the judgment, and divesting George D. Holland of any title or claim to said interest so vested is affirmed. That part of the judgment which required H. B. Lesesne to pay into the registry of the court the sum of $2,852.-80 for the benefit of George D. Holland, is reformed by requiring H. B. Lesesne to pay

into the registry of the trial court the additional sum of $1,500.00. Costs are adjudged, three-fourths against appellant, George D. Holland, and one-fourth against appellee, H. B. Lesesne.

Reformed and affirmed.