LEON GAINES, Petitioner
V.
BLAKE HAMMAN, Respondent

No. A-8462.   Decided June 13, 1962
Rehearing Denied July 18, 1962
358 S.W. 2d 557

ASSOCIATE JUSTICE CLYDE E. SMITH concurring in written opinion.

ASSOCIATE JUSTICE RUEL C. WALKER, joined by ASSOCIATE JUSTICES GRIFFIN and CULVER dissent.

*Settle & Settle,* Fort Worth, for petitioner.

*Hudson, Keltner, Jordan, Smith & Cunningham,* Fort Worth, for respondent.

ASSOCIATE JUSTICE NORVELL delivered the opinion of the Court.

The Court of Civil Appeals affirmed a summary judgment rendered in favor of the defendant Blake Hamman and against the plaintiff Leon Gaines, 346 S.W. 2d 186. Being of the opinion, since confirmed by a plenary examination of the record, that the decision of the Court of Civil Appeals is contrary to the decisions of this Court in Fitz-Gerald v. Hull, 150 Texas 39, 237 S.W. 2d 256 and Omohundro v. Matthews, 161 Texas 367, 341 S.W. 2d 401, we granted writ of error and now reverse the judgments of the trial court and the Court of Civil Appeals and remand the cause to the District Court.

In this Court the respondent Hamman raises questions relating to the summary judgment practice under Rule 166A, Texas Rules of Civil Procedure. Hamman asserts and strongly maintains that Gaines in his deposition which is a part of the summary judgment record, swore to facts which, if true, would defeat his asserted cause of action based upon the theory of a constructive trust.[1] It is also urged that Gaines' testimony was too vague and uncertain to support a judgment based upon said trust theory.

---

1. By express provision, constructive trusts are not affected by the Texas Trust Act. Article 7425-b-2, Vernon's Ann. Texas Stats. Fitz-Gerald v. Hull, 150 Texas 39, 237 S.W. 2d 256.

As this cause must be retried under our holding that issues of fact are indicated by the record, we purposely refrain from making an exhaustive statement. Other and further evidence will undoubtedly be received upon another trial.

Such facts as are disclosed by the record and are necessary to an understanding of our holdings are as follows:

Leon Gaines is a geologist of wide experience in the Texas counties of Palo Pinto, Wise, Jack and Young. He had acquired an extensive collection of oil well logs and other data relating to oil exploration and discovery activities in the counties named. Hamman is an oil and gas lease broker. It appears that from 1954 to 1958 Hamman and Gaines were engaged in numerous transactions together. As a general rule Gaines would work up the geological information upon a particular tract of land upon which they planned to acquire a lease; Hamman would underwrite the expenses incidental to the deal, and generally take a lease upon the property in his own name. He would then interest others in the lease and transfer the same to such third parties, retaining an overriding royalty. After Hamman's expenses had been recouped, the override would be divided equally between Hamman and Gaines. While the taking of title in Hamman's name was the usual thing, it was not the invariable practice. In his affidavit counter to Hamman's motion for summary judgment, Gaines said:

"The agreement which we had was that as to any lease or prospect on which I developed or prepared the geology, and which Hamman, or both of us working together, attempted to sell, we would own an equal interest in the lease or prospect and would share equally in any interest reserved when a lease was turned. It was also understood and agreed between us that in making a trade, Hamman would be entitled to recoup the costs which he had incurred in acquiring it. The original agreement was made in 1954. It was oral, and it was repeatedly reaffirmed from time to time by Hamman and by myself; however, I am unable to state at this time when and with respect to which prospect such statements were made."

According to Gaines' affidavit, some four years after the original agreement or understanding was made, he and Hamman became interested in an oil and gas lease on some land in Young County owned by C. H. Rogers. The lease was held in the name of Gaines and one of his employees. It was necessary that a well be drilled to prevent the lease's termination. Hamman offered to

try to turn the lease for a half interest therein. Gaines' employee ceased to figure in the deal and a short extension of the lease was procured by Gaines. Hamman then succeeded in working out a deal whereby Al Addyman, Jess Harwell and Clarke Cummins agreed to pay the costs for drilling a well to the casing point in return for a 3/4 interest of the 7/8 working interest of the lease. This left Hamman and Gaines sharing a 1/4 of the 7/8 working interest equally, subject to a $1900.00 oil payment held by the lessor. Gaines executed the necessary written instrument to vest Hamman with his part of the working interest. This transaction was similar to numerous others had between the parties in which Gaines furnished the geology and Hamman secured operators to drill the lease, retaining an override which was divided between the parties. In the case of the Rogers lease the lease was in Gaines' name, whereas usually Hamman was the record holder of the lease.

Shortly after the Rogers deal, the transactions and occurrences took place with reference to the Logan lease which gave rise to this lawsuit. Again we refer to Gaines' affidavit. He stated that a portion of the Logan properties became open acreage because of the expiration of a lease insofar as it covered the particular tract involved. Gaines had done geological work on the tract and discussed with Hamman the advisability of securing a lease upon the open acreage concerned. In the early part of November 1958 both he and Hamman talked to L. M. Logan, the owner of the property. On November 17, L. M. Logan and wife executed an oil and gas lease to Hamman covering some 376.4 acres of land. This lease was placed in a Fort Worth bank with directions that the lease be delivered upon the payment of an attached draft. On November 27, 1958, a successful drill-stem test was made on the Rogers well which brought about a conversation between Gaines and Hamman in which, according to Gaines' best recollection, Hamman said:

"We have to get a deal for these people (Addyman, Harwell and Cummins). They are ready to go on another well, because they have gotten a good well on your geology, on the Rogers. It will be the same deal as the Rogers."

According to Gaines he met with Hamman, Addyman, Harwell and the completion engineer on the Rogers well in Jacksboro, Texas on November 29, 1958, and "discussed in detail the geological possibilities of the Logan prospect and gave them my interpretation of its subsurface geology". He thereafter completed a

geological report and plat which he delivered to Hamman around the first of December.

On December 22, 1958, Addyman and his associates paid the draft above mentioned and as a consequence, the bank delivered the lease to Hamman. The Addyman group financed entirely the drilling of the initial well to the casing point on the Logan tract, but paid only their proportionate part of the cost of the drilling of the second well thereon. Addyman and associates now hold 3/4 of the 7/8 working interest. The remaining 1/4 of the 7/8 working interest now stands in the name of Blake Hamman and it is this interest upon which Gaines seeks to impress an equitable trust to the extent of a 1/8 interest in and to the 7/8 working interest in the Logan lease.

■ If Gaines' statements be credited, we think it reasonable to conclude therefrom that Gaines and Hamman, for a number of years, had been engaged in acquiring oil and gas leases which they were to own jointly. These leases would then be "turned" or transferred to third parties and an override or other mineral interest retained and held jointly by the parties in equal portions, subject to Hamman's right to recoup his out-of-pocket expenses. Under the arrangement between the parties, Gaines would contribute the "geology" and Hamman would pay the expenses incident to the procuring of the leases and the turning of the deal. Undoubtedly if Gaines' version of the parties' dealings be accepted, there existed a confidential relationship between the parties insofar as the Logan lease was concerned. The Rogers transaction had just been completed. Hamman wanted another deal for the Addyman group and said in effect that it would be "the same deal as the Rogers". Addyman, according to his affidavit, received Gaines' geological reports and largely upon the strength thereof decided to enter the Logan venture. Should Hamman keep the entire 1/4 of the 7/8 working interest after production upon the Logan had been obtained, he would be the recipient of an unjust enrichment resulting from the breach of a confidential relationship. This conclusion is fully supported by Fitz-Gerald v. Hull, 150 Texas 39, 237 S.W. 2d 265; Omohundro v. Matthews, 161 Texas 367, 341 S.W. 2d 401 and Peckham v. Johnson, Texas Civ. App., 98 S.W. 2d 408, affirmed, 132 Texas 148, 120 S.W. 2d 786.

It is not a complete answer to Gaines' asserted cause of action to say that in some of the Gaines-Hamman ventures the procedures followed varied in detail from the general scheme of operation above outlined. Nor was it essential that at the com-

mencement of each particular venture, the parties reiterate verbally the terms of the general agreement under which they had operated in order to make such understanding effective insofar as a new venture was concerned. Of course it is Hamman's contention that all of his deals with Gaines were separate and independent transactions and there was no general understanding or agreement between them. He says that at most, Gaines was employed to do a certain piece of work, namely provide geological information and was to receive petroleum interests therefor instead of money. It is asserted that Gaines' remedy, if any, lies in assumpsit and not in equity to establish a constructive trust. These contentions and theories, however, simply raise fact issues. On summary judgment we must accept Gaines' version which, as above pointed out, clearly supports the theory of a general understanding as to methods of operation. Particularly is this true with reference to the Rogers and the Logan leases.

■ It is further no objection to the theory of constructive trust that the parties may have contemplated a division of property in the form of overrides or something similar thereto rather than a division of parties in the form of money. The same may be said with reference to the general understanding of the parties, that Hamman was to pay all expenses, subject to his right of recoupment. It was not essential that the parties should agree that losses (unrecouped expenses) should be borne equally.[2] We are not here concerned with the question of the technical existence of a partnership or a joint venture insofar as third persons are concerned. The important circumstance from which the law will raise a constructive trust is the breach of a confidential relationship which may exist, although such relationship may not meet the technical requirements of a partnership or joint venture. Mills v. Gray, 147 Texas 33, 210 S.W. 2d 985.[3] If we consider an agreement to

2. Gaines' statement in regard to losses was not clear. He said that he supposed that if Hamman had given him a bill of half the losses on an unsuccessful deal, he would have paid it. He gives no instance where he had done so.

3. Cf. Cartwright v. Minton, Texas Civ. App., 318 S.W. 2d 449, wr. ref., n.r.e. wherein it was said that:

"The term fiduciary is derived from the civil law. It is impossible to give a definition to the term that is comprehensive enough to cover all cases. Generally speaking, it applies to any person who occupies a position of peculiar confidence towards another. It refers to integrity and fidelity. It contemplates fair dealing and good faith, rather than legal obligation, as the basis of the transaction. The term includes those informal relations which exist whenever one party trusts and relies upon another, as well as technical fiduciary relations."

Also see Holland v. Lesesne, Texas Civ. App., 350 S.W. 2d 859 in which it was said that:

"Since the decision of the Supreme Court in Fitz-Gerald v. Hull, 150 Texas 39, 237 S.W. 2d 256, 261, it has been well established that such strict

share money losses, for example, as a prerequisite to the existence of a joint venture, it is difficult to find this element in the case of MacDonald v. Follett, 142 Texas 616, 180 S.W. 2d 334 in which this Court held that evidence supported the theory of a constructive trust giving rise to an equitable title upon which trespass to try title could be maintained. This Court took a broad view of the equity power and announced that:

"Whether or not joint owners of overriding royalty interests sustain relations of trust and confidence toward each other depends upon the facts and surrounding circumstances. They do not sustain that relationship by virtue alone of their being joint owners. Our question then is whether the facts above recited, viewed in the light most favorable to Follett's contention, raise an issue for the jury on the question of the existence of a relation of trust and confidence.

"This is a suit in equity and in that realm the conduct of parties is judged by refined standards. No rules can be prescribed and no attempt should be made to formulate rules for the measurement of conduct by courts of equity, but that such conduct must be measured by standards exacting the utmost fidelity between the parties is universally recognized. We experience no difficulty in arriving at the conclusion that the facts above narrated, if found to be the true facts, establish that a relation of trust and confidence existed between Follett and MacDonald prior to the execution of the 1938 top leases."

In his brief respondent places much emphasis upon the oral deposition of Leon Gaines and complains of petitioner's statements from the record because they refer to Gaines' affidavit rather than to his deposition. It is asserted that the deposition controls over the affidavit where there is inconsistency or contradiction between them. The thrust of the argument is that Gaines' deposition evidence does not make out a cause of action but on the contrary demonstrates that petitioner, as plaintiff, cannot recover. As bearing upon this contention, a chronological statement from the record may be helpful.

This suit was filed by Gaines on December 17, 1959. On January 18, 1960 his deposition as an adverse party was taken by Hamman. This deposition is some 105 pages in length and all

and technical relationships as trustee and cestui que trust, principal and agent, attorney and client, are not indispensable, but that such informal relationships, such as moral, social, domestic, or merely personal ones where one person trusts in and relies upon another, are sufficient."

questions were propounded by Hamman's attorney. Gaines' attorney made no attempt to rehabilitate his client or afford him an opportunity to explain his answers in any way, as he evidently preferred to leave this to the actual trial of the cause.

On May 16, 1960, Hamman filed a motion for summary judgment based largely upon petitioner's deposition asserting, among other things, that Gaines testified in his deposition that he had no expressly stated contract with Hamman relating specially to the Logan lease. It is argued that Gaines' deposition failed to show an enforceable cause of action.

On June 22, 1960, Gaines, having employed new attorneys, answered the motion for summary judgment and in connection therewith filed affidavits executed by I. B. Beren, Al Addyman and himself.

On July 11, 1960, Gaines filed an additional affidavit which was quite detailed and in content largely supported the allegations of his petition which Gaines had attempted to place in affidavit form by his earlier statement of June 22 wherein he had sworn that he personally knew that all the allegations of his petition were true except those that were made on information and belief. The statement of the facts of the case given in the forepart of this opinion is largely taken from the last affidavit made by the petitioner.

■ The issue in a summary judgment proceeding is whether or not there is a genuine issue of fact in the case; and in determining this issue, we apply the rule applicable to instructed verdict cases in that the evidence is viewed in the light most favorable to the party opposing the motion. Gulbenkian v. Penn, 151 Texas 412, 252 S.W. 2d 929; Smith v. Bolin, 153 Texas 486, 271 S.W. 2d 93.

Rule 166A, Texas Rules of Civil Procedure, provides that a summary judgment "shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that, except as to the amount of damages, there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". The record of a summary judgment proceedings then consists of the pleading whose office it is to outline the claims and defenses of the respective parties, the depositions and admissions on file and affidavits submitted either in support of or opposing the motion. With the exception of the pleadings it is not essential that any

or all of the other possible components of the summary judgment record be present. While admissions on file may be likened to pleadings and considered as written judicial admissions, there is no basis for giving controlling effect to a deposition as compared to an affidavit. Neither does the fact that the deposition is more detailed in some respects than the affidavit vest it with dominant authority, provided of course that the affidavit possesses the necessary requisites prescribed by this Court in Tobin v. Garcia, 159 Texas 58, 316 S.W. 2d 396 wherein it was said that under the provisions of Rule 166A affidavits to be effective either to support or oppose a motion for summary judgment "must be made by competent affiants with personal knowledge of the statements in them, which statements must be so worded that if given on the witness stand they would be admissible as evidence." Obviously mere conclusions will not suffice[4] and cases so holding do not support the thesis that in cases of inconsistency or conflict, the deposition prevails over the affidavit. If conflicting inferences may be drawn from the deposition and from the affidavit of the same party, a fact issue is presented. United States Fidelity & Guaranty Co. v. Carr, Texas Civ. App., 242 S.W. 2d 224, wr. ref., New St. Anthony Hotel Co. v. Pryor, Texas Civ. App., 132 S.W. 2d 620, wr. ref. It is not the purpose of the summary judgment rule to provide either a trial by deposition or a trial by affidavit, but rather to provide a method of summarily terminating a case when it clearly appears that only a question of law is involved and that there is no genuine issue of fact. The present record does not disclose a case for summary judgment. In view of the detailed discussion of authorities contained in this Court's opinions Fitz-Gerald v. Hull, 150 Texas 39, 237 S.W. 2d 256 and Omohundro v. Matthews, 161 Texas 367, 341 S.W. 2d 401, further comment is unnecessary here.

The judgments of the courts below are reversed and the cause remanded to the District Court for further proceedings not inconsistent with this opinion.

Opinion delivered June 13, 1962.

ASSOCIATE JUSTICE SMITH, concurring.

---

4. Such cases as Bliss v. City of Fort Worth, Texas Civ. App., 288 S.W. 2d 558, wr. ref. n.r.e.; Mugrage v. Texas Employers Ins. Co., Texas Civ. App., 304 S.W. 2d 189, wr. dism.; Farmers State Bank v. First State Bank, Texas Civ. App., 317 S.W. 2d 768, no wr. hist.; Duffard v. City of Corpus Christi, Texas Civ. App., 332 S.W. 2d 447, no wr. hist. are not authority for giving dominant effect to detailed deposition statements upon motion for summary judgment. These cases, and those of like holdings, simply support the well recognized rule that mere statements of legal conclusions in an affidavit are insufficient to raise fact issues.

I concur in the result reached by the majority only because, in my opinion, there is evidence of probative force other than the evidence which has been rendered ineffective by the Texas Trust Act, Article 7425b, which raises a genuine issue of fact as to whether a fiduciary relationship, a relation of trust and confidence, existed between Gaines and Hamman. The facts in this case meet the test contained in my dissent in Omohundro v. Matthews, 161 Texas 367, 341 S.W. 2d 401. Therefore, the case should have been determined by the trier of the facts and the trial court erred in granting Hamman's motion for summary judgment.

Opinion delivered June 13, 1962.

ASSOCIATE JUSTICE WALKER, dissenting.

I respectfully dissent. The majority holding rests entirely on petitioner's unsupported general statement, made in the affidavit, which is simply his conclusion as to the nature of the agreement and understanding of the parties. This is the ultimate issue to be decided by the trier of fact upon the remand. If the case had been tried in the conventional manner, petitioner's statement of such a conclusion from the witness stand would be entitled to no weight in the face of his deposition testimony regarding the details of the agreement. I do not think it should be given the effect accorded to it by the majority in this summary judgment proceeding. In the testimony of a witness as in the findings of a jury, the general must always yield to the specific.

Petitioner's deposition testimony makes it clear that, contrary to the statement made in his affidavit, he was not to own an equal interest in any lease on which he prepared the geology and which was purchased by respondent. It was understood that the lease would be taken in the name of respondent, who would either pay for it or get it financed. The principal details of the agreement are disclosed by the following excerpts from petitioner's deposition:

"Q. But he would take it in his name and then try to get it financed where he would recoup the money he had put in it and then pay for getting a well drilled.

"A. Yes, sir.

"Q. Now, that was the basic deal?

"A. That was the basic deal.

"Q. And then after that was done you were to get an assignment of half of what he had left?

"A. Yes, sir.

"Q. And if he ended up with nothing but an override, why, you got half of that?

"A. Half of that.

"Q. And if he ended up with a working interest you got half of the working interest?

"A. Yes, sir.

"Q. And if he ended up with nothing —

"A. Why, we just forgot it."

\* \* \*

"Q. And if he was able to turn it and clear it where he retained any interest, whether it was a working interest or carried interest, or an override, you were supposed to get an assignment from him of half of what he had left?

"A. Yes, sir.

"Q. But you weren't supposed to get the assignment until after it was determined how much he had left?

"A. I believe you stated that right, yes, sir. In other words, he would give me an assignment then."

\* \* \*

"Q. Now, the only thing, the only fraud or only promise that Blake ever has broken, if he has broken any, is his failure to give you an assignment after he got this Logan deal financed and drilled?

"A. Yes, sir, that's right."

\* \* \*

"Q. Suppose that he turned it and made $50,000 in cash, would you get part of the cash?

"A. That wasn't the understanding."

\* \* \*

"Q. In other words, getting down to it: If you worked up the geology and he took a deal on that same tract, and if he was able to turn it where he retained any interest in the lease you were to get half of what he retained?

"A. Yes, sir."

Petitioner did not testify that he was to own a one-half interest in the property as soon as it was purchased by respondent, or that he would be responsible for any of the expenses thereafter incurred. Respondent was at liberty to sell any interest he desired to such persons, for such prices and upon such terms as he deemed proper. If he received all cash and retained nothing in the way of an override, oil payment or working interest, petitioner was to receive nothing.

Both parties testified that there was no character of general partnership between them. Each made deals during the five-year period in which the other did not participate. It is equally clear that they did not agree to engage in a joint venture. Petitioner had no control whatsoever, and there was no agreement that he would share in either profits or losses. When all of the underbrush and window dressing are removed, we have a suit to enforce an agreement that in return for petitioner's geological services, respondent would, after buying and paying for the lease and selling part of it to other parties, convey to petitioner one-half of whatever interest had been retained. In other words, the action is brought to recover an interest in real estate which respondent promised to convey in consideration for services rendered by petitioner.

In my opinion enforcement of the contract is plainly precluded by the statute of frauds. Sorrells v. Coffield, 144 Texas 31, 187 S.W. 2d 980; Tolle v. Sawtelle, Texas Civ. App., 246 S.W. 2d 916 (wr. ref.). The facts of the Sorrells case are quite similar to those involved here. The plaintiff there testified, and the jury found, that land was purchased in the name of and paid for by the defendant pursuant to a previous agreement that as and when a part of the minerals thereunder were sold sufficient to repay him therefor, the remaining interest in the land, if any, would be owned jointly by the plaintiff and defendant. In holding that the agreement was unenforceable under the statute of frauds, the Court pointed out that the jury's finding was that the plaintiff would become invested with his equitable title as and when mineral interests were sold sufficient to reimburse

the defendant. That is precisely the effect of the agreement which petitioner is attempting to enforce in the present case.

According to petitioiner's testimony, he was entitled to no specific interest in the property unless and until respondent had disposed of a part on such terms as enabled him to recoup his investment and expenses. Then and only then could the interest which petitioner was to receive be determined. Then and only then was respondent obligated to convey an interest to petitioner. If respondent sold the entire property for cash, petitioner was entitled to nothing. How can it be said then that petitioner was invested with the equitable title at a time when the nature and extent of the interest he would receive was unascertained and unascertainable? Under the agreement of the parties, respondent necessarily became the legal and equitable owner of the property when it was purchased. His promise was that he would thereafter convey an interest to petitioner in consideration of the latter's services. This is nothing more nor less than a contract for the sale of real estate.

The term "constructive trust" is not a magic phrase that makes the statute of frauds go away when it is uttered. It does not refer to a substantive relationship, legal or equitable, but to a remedial device which courts of equity use when they decide to compel a person holding title to property to convey it to another on the ground that the former would be unjustly enriched if permitted to retain it. In the words of Judge Cardozo, it "is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee". See Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 122 N.E. 378. "He is not compelled to convey the property because he is a constructive trustee; it is because he can be compelled to convey it that he is a constructive trustee." Scott on Trusts, 2nd ed. 1956, Vol. IV, Sec. 462, p. 3103. It seems to me, therefore, that courts should be somewhat slow to compel a conveyance in situations where the Legislature has declared that the defendant shall not be compelled to convey. Bogert says that when the fiduciary obligation happens to be identical with the obligation required to be manifested by writing under the statute, the fact that it is a fiduciary obligation should not exempt it from obedience to the statute any more than if it were a nonfiduciary contract. Bogert, Trusts and Trustees, 1960 ed. Sec. 488, p. 188. In such a situation, enforcement of the promise on the "constructive trust theory" does not render the statute of frauds in-

applicable; it is simply a polite way of saying that the court will not abide by the statute.

It is no answer to say that compelling performance of the contract in the present case is merely an extension of the holdings in Fitz-Gerald v. Hull, 150 Texas 39, 237 S.W. 2d 256; Omohundro v. Matthews, 161 Texas 367, 341 S.W. 2d 401; Mills v. Gray, 147 Texas 33, 210 S.W. 2d 985; and McDonald v. Follett, 142 Texas 616, 180 S.W. 2d 334. *Omohundro* and *McDonald* were "reacquisition" cases. The parties in *Fitz-Gerald* had entered into a joint venture for the acquisition, development and operation of an oil and gas lease, and the defendant took the lease in his own name in violation of such agreement. In all three of these cases the defendants were compelled to convey interests which they had wrongfully acquired in breach of a fiduciary duty owing by them to the plaintiffs. *Mills* was a pure restitution case in which the constructive trust was predicated on a confidential relation that was in no way dependent upon the agreement sought to be enforced. These four decisions should not now be homogenized so as to justify a decree requiring performance of an oral promise to convey where there is no relationship of trust and confidence apart from the agreement made the basis of the suit and no acquisition by the defendant of an interest in the land in breach of a duty owing by him to the plaintiff.

A person in petitioner's position who has made a contract that is unenforceable under the statute of frauds is entitled, of course, to restitution. Alworth v. Ellison, Texas Civ. App., 27 S.W. 2d 639 (wr. ref.). But restitution could not give petitioner an interest in land he had never owned. It would entitle him to the reasonable value of the services rendered. Respondent acquired no interest in the land by breaching a fiduciary duty owing by him to petitioner. His only obligation was to convey to petitioner one-half of whatever interest remained after the lease had been sold to others. By enforcing that obligation, the Court gives to petitioner the full benefit of a contract which the statute of frauds declares shall not be enforced. If this trend continues indefinitely, the statute will finally become meaningless. It is my opinion that the present case opens an avenue which should remain closed. Petitioner has not sought restitution of that to which he is entitled, and I would affirm the judgments of the courts below.

ASSOCIATE JUSTICES GRIFFIN and CULVER join in this dissent.

Opinion delivered June 13, 1962.