ATRIUM BOUTIQUE, et al., Appellants,

v.

DALLAS MARKET CENTER CO.,
et al., Appellees.

No. 05–84–00493–CV.

Court of Appeals of Texas,
Dallas.

July 15, 1985.

Rehearing Denied Aug. 26, 1985.

W.T. "Skip" Leake, Dennis G. Brewer, Inc., Irving, for appellants.

Joseph L. McEntee, Jones, Day, Reavis & Pogue, and John L. Hauer, Akin, Gump, Strauss, Hauer & Feld, Dallas, for appellees.

Before STEPHENS, ALLEN and McCLUNG, JJ.

STEPHENS, Justice.

Joan Bayoud and Linna Edwards, d/b/a Atrium Boutique, filed suit against Trammel Crow, Jr., Trammel Crow, Sr., William Cooper, and the Dallas Market Center Company on theories of deceptive trade practices and constructive fraud for damages resulting from the breach of an oral lease renewal option. The jury answered the special issues submitted to them in favor of all the defendants except Trammel Crow, Jr. The trial court then entered judgment on the verdict with respect to Trammel Crow, Sr., William Cooper, and the Dallas Market Center Company, and entered judgment notwithstanding the verdict with respect to Trammel Crow, Jr. On appeal, Bayoud and Edwards bring forward six points of error. We disagree with their contentions and, accordingly, affirm.

In 1979, Joan Bayoud, d/b/a Joan and Laura Boutique, and the Dallas Market Center entered into a three year lease by which Bayoud leased space in the Anatole Hotel, in Dallas, Texas. Bayoud was first contacted about opening a boutique in the Anatole by Mrs. Trammel Crow, Sr., and she was shown the lease space by Trammel Crow, Jr., on at least two occasions prior to signing the lease. In 1980, Bayoud sought and received permission, as required by the lease, to sell part of her business to Linna Edwards. Bayoud and Edwards later became equal partners, and the name of the business was changed to the Atrium Boutique. In 1981, Bayoud and Edwards decided to sell the business because Bayoud was suffering from ill health. They located a buyer and entered into a contract of sale, subject to the approval of the purchaser and the renewal of the lease by the Dallas Market Center Company. The Dallas Market Center Company notified Bayoud and Edwards that they did not approve the purchaser and that the Atrium Boutique's lease would not be renewed.

At trial, Bayoud testified that prior to signing the lease, Trammel Crow, Jr., orally promised her that she could indefinitely renew the lease for successive three year periods notwithstanding the absence of an option provision. Crow, Jr., objected that the testimony violated the parol evidence rule and the statute of frauds; Bayoud and Edwards argued that the parol testimony concerning the oral option was not barred by the statute of frauds because a confidential relationship existed between Joan Bayoud and Crow, Jr. They asserted that the basis of this confidential relationship was the friendship and trust that developed between the Crows and the Bayouds over a period of about twenty-two years. The court permitted the testimony; the jury found that a confidential relationship did in fact exist and that Crow, Jr., breached a fiduciary duty to Bayoud by breaching his oral contract with her concerning the lease renewal.

■ On appeal, Bayoud and Edwards complain that the trial court erred in disregarding this jury finding. They concede, however, that unless a confidential relationship existed, they cannot recover upon their theory that Crow, Jr's, failure to renew the lease constituted the breach of an oral lease option, because the evidence of any oral agreement would be precluded by the statute of frauds. In reviewing the entry of a judgment notwithstanding the verdict, we must consider all the evidence

in the light most favorable to the party against whom the judgment was rendered, and every reasonable inference from the evidence must be indulged in that party's favor. *Dowling v. NADW Marketing Inc.*, 631 S.W.2d 726, 728 (Tex.1982). To sustain the action of the trial court it must be determined that there is no evidence of probative force upon which the jury could have made the findings relied upon. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 931 (Tex. 1983).

The cases upon which Bayoud and Edwards rely for the theory that damages are available for the breach of a fiduciary duty arising from a confidential relationship, all involve the imposition of a constructive trust when there is an abuse of confidence rendering the acquisition or retention of property by one person unconscionable against another. For the purpose of this opinion, we will assume that when the property acquired consists of permanent fixtures, rather than realty or personality that may be conveyed to the injured party, a constructive trust may be imposed on the value of those fixtures.[1]

■ It is well settled that a confidential relationship sufficient to warrant the imposition of a constructive trust may arise not only from technical fiduciary relationships, such as attorney-client, trustees *cestui que trust*, partner and partners, etc., but may arise informally from moral, social, domestic, or purely personal relationships. *Thigpen v. Locke*, 363 S.W.2d 247 (Tex.1963); *Mills v. Gray*, 147 Tex. 33, 210 S.W.2d 985 (1948); *Tuck v. Miller*, 483 S.W.2d 898 (Tex.Civ.App.—Austin 1972, writ ref'd n.r.e.). However, the imposition of a constructive trust in these informal situations must be done with caution. *Thigpen*, 363 S.W.2d at 253. There must have been a previous relationship before, and apart from, the agreement made the basis of the suit, which placed the parties in a position of confidence and trust. *Consolidated Gas & Equipment Co. v. Thompson*, 405 S.W.2d 333, 336 (Tex.1966).

The existence of the fiduciary relationship is to be determined from the actualities of the relationship of the persons involved. *Thigpen*, 363 S.W.2d at 253. Constructive trusts cannot arise on every moral wrong and cannot correct every injustice for this would defeat the purpose of the statute of frauds. *Pope v. Garrett*, 147 Tex. 18, 211 S.W.2d 559, 562 (1948).

■ Considering the evidence as a whole and most favorably to Bayoud and Edwards, we hold that there is not the type of evidence of justifiable trust and confidence that would create a fiduciary relationship or warrant the imposition of a constructive trust. The record reflects only that the Bayouds and the Crows were socially acquainted. The basis of this acquaintance was that Trammel Crow Jr.'s sister and Mrs. Bayoud's daughter were childhood classmates and friends at Hockaday since the second grade. Mrs. Bayoud described her family's acquaintance with the Crows in the following manner:

> Well, I always thought that we had a very friendly, respectful relationship with each other. I felt friendly toward their family, and they were certainly friendly towards ours.

The only evidence that Mrs. Bayoud offered to show that there was more than a casual acquaintance between her family and the Crows was her testimony that she was on a first name basis with the Crows; that she attended Trammel Crow Jr.'s, and Lucy Crow's wedding; that the entire Crow family attended her daughter's wedding; that the Crows attended at least two social functions at her home; and that she and her husband had been in the Crow's home on at least three or four occasions for parties. With respect to Trammel Crow, Jr., Mrs. Bayoud testified that she first met him when he was about eleven years old and that she was very fond of him. However, she further testified that, prior to leasing the space at the Anatole, she was never "guided" by Trammel Crow, Jr. With respect to her reliance and trust in

---

**1.** We do not consider the question of whether a confidential relationship, if established, would justify enforcement of an oral contract or lease as an exception to the statute of frauds.

negotiating the Anatole lease with the "Crows and the Dallas Market Center Company," Mrs. Bayoud testified:

Well, I certainly thought they were friends. I—I mean I can't answer for now, but I thought they were friends at the time. I trusted them, I respected them. I had known the family for 20 years and I respected them and I felt like they were a family like our family, a close-knit family, good family, good people. I believed them.

We conclude that the relationship between the Bayouds and the Crows, in general, and Mrs. Bayoud and Trammel Crow, Jr., in particular, was not of the same nature as that involved in *Holland v. Lesesne*, 350 S.W.2d 859 (Tex.Civ.App.—San Antonio 1961, writ ref'd n.r.e.). In *Holland*, the court found that there was an *"unusually close* personal friendly and confidential relation between the parties and their families. They visited each other regularly, they dined together, and they vacationed together." *Holland*, 350 S.W.2d at 862. (emphasis added). Nor was there evidence that the parties were not dealing with each other on equal terms, either because of an over-mastering dominance or one side, or weakness, dependence or justifiable trust on the other, as that present in *Tuck v. Miller*, 483 S.W.2d 898. (Tex.Civ.App.—Austin 1972, writ ref'd n.r.e.). The evidence in this case only reflects an arms-length transaction involving subjective trust based on a casual friendship. It is settled that mere subjective trust alone is not enough to transform arms-length dealing into a fiduciary relationship so as to avoid the statute of frauds. *Thigpen*, 363 S.W.2d at 253. Bayoud's and Edward's points of error one, two, three, and six are overruled.

In their fourth and fifth points of error, Bayoud and Edwards contend that the trial court erred in not permitting them recovery under their alternative theory of violations of the Texas Deceptive Trade Practices Act, TEX.BUS. AND COMM. CODE ANN., Sec. 17.50(a) (Vernon Supp. 1985). We disagree. We have reviewed the record and conclude there is no evidence of probative force to support the jury's finding that Trammel Crow, Jr., knowingly engaged in some false, misleading, or deceptive conduct as defined in the court's charge, or that he knowingly engaged in any unconscionable conduct toward Joan Bayoud. Assuming an oral contract did in fact exist, the record only reflects a breach of contract. The mere breach of an oral contract is not fraud and the subsequent breach is not evidence that may be considered in determining whether or not there was fraud in the original transaction. *Thigpen*, 363 S.W.2d at 252. There is no evidence that, at the time the "oral contract" was entered into, Trammel Crow, Jr., did not intend to perform his obligations under that "contract." Bayoud's and Edward's fourth and fifth points of error are overruled.

Affirmed.