Anchor v. Kachina 



 TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00254-CV







Anchor Operating Co. and Stable Energy, L.P., Appellants



v.



Kachina Oil & Gas, Inc., Appellee







FROM THE DISTRICT COURT OF FAYETTE COUNTY, 155TH JUDICIAL DISTRICT


NO. 92V-248, HONORABLE DAN R. BECK, JUDGE PRESIDING








 Appellants Anchor Operating Co. and Stable Energy, L.P. (collectively "Anchor")
appeal a summary judgment declaring appellee Kachina Oil & Gas, Inc. ("Kachina") to be the
operator of an oil and gas well. Anchor contends that Kachina failed to meet its summary
judgment burden of proof. We will reverse the trial-court judgment and remand the cause.



FACTUAL AND PROCEDURAL BACKGROUND


 This case involves a dispute over the operation of the Triangle K Well No. 1, an
oil and gas well located in Fayette County. In October 1980, CRB Oil & Gas, Inc. ("CRB") and
other parties entered into a joint operating agreement designating CRB as operator of the well. 
After drilling the well, CRB encountered financial difficulties and subcontracted with K-N
Operating Corporation ("K-N") in 1983 to operate the well. In 1986, K-N transferred operations
to MGN Oil & Gas Corporation ("MGN") as the new operator. In October 1991, MGN
designated Kachina as the operator. 

 In September 1992, Kachina notified interest owners, including Anchor, that the
well had ceased production and that the lease would be lost without action. Kachina proposed a
reworking operation and notified the non-operating interest owners of the estimated cost. Anchor
responded that it believed the proposed workover to be imprudent and that Anchor intended to
take over operation of the well. Throughout November 1992, the parties continued to dispute the
propriety of the workover, payment for operating cost arrearage, and who was the rightful
operator under the joint operating agreement. On the eve of the expiration of the lease,
representatives of Anchor forcibly seized the well. This litigation ensued.

 Anchor sought, inter alia, a declaratory judgment that it was the proper operator
of the well. (1) Anchor and Kachina filed cross-motions for partial summary judgment. Kachina's
motion for summary judgment requested: a permanent injunction prohibiting Anchor from
operating or interfering with the well, attorney's fees, and that plaintiff Anchor take nothing by
its suit. Following a hearing, the trial court denied Anchor's motion for summary judgment and
granted Kachina's in part. The trial court's order granting Kachina partial summary judgment
specified that Anchor take nothing in its suit and denied all relief requested by Anchor. Even
though Kachina did not request it, the order also declared Kachina to be the operator of the well. 
The summary judgment order also granted Kachina reasonable attorney's fees, the amount of
which was determined at a later hearing. On appeal, Anchor argues that based on the summary-judgment evidence, Kachina failed to meet its burden of proof.



DISCUSSION


 Any party may move for summary judgment under the Texas Rules of Civil
Procedure. See Tex. R. Civ. P. 166a. When both parties seek summary judgment, each party
must carry its own burden; neither can prevail because of the failure of the other to discharge its
burden. International Union United Auto. Aerospace & Agric. Implement Workers v. Johnson
Controls, Inc., 813 S.W.2d 558, 563 (Tex. App.Dallas 1991, writ denied); see The Atrium v.
Kenwin Shops, 666 S.W.2d 315, 318 (Tex. App.Houston [14th Dist.] 1984, writ ref'd n.r.e.). 
Initially, we note that Anchor does not, in this appeal, challenge the denial of its own motion for
summary judgment. While an order denying a motion for summary judgment is generally not
appealable, it is appealable when the parties have filed cross-motions and the court grants one and
overrules the other. See Ackermann v. Vordenbaum, 403 S.W.2d 362, 365 (Tex. 1966);
International Union, 813 S.W.2d at 563. Because Anchor did not assign error to the denial of
its motion, the sole issue before us is the propriety of granting Kachina's motion.

 The trial-court order granting Kachina's summary judgment motion specifically
declared Kachina to be the operator of the well. Kachina, however, did not request such relief,
either in its answer to Anchor's lawsuit or in its motion for summary judgment. Rather, Kachina
urged simply that Anchor's requested reliefto be declared operatorbe denied. While the
summary judgment order does deny Anchor's requested relief, it goes further and actually declares
Kachina to be the operator. A summary judgment motion must expressly present the grounds
upon which it is made. McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 341 (Tex.
1993). Granting summary judgment on grounds not presented in the motion is reversible error. 
See Mafrige v. Ross, 866 S.W.2d 590, 591 (Tex. 1993); Lochabay v. Southwestern Bell Media,
Inc., 828 S.W.2d 167, 170 (Tex. App.Austin 1992, no writ). Since Kachina's summary
judgment motion did not request to be declared operator, the trial court erred when it declared
Kachina as such.

 Moreover, even if we construe Kachina's motion to include a request to be declared
operator, Kachina failed to meet its summary judgment burden of proof. Under well-established
standards, Kachina has the burden of showing that there is no genuine issue of material fact and
that it is entitled to judgment as a matter of law. See Nixon v. Mr. Property Management Co.,
690 S.W.2d 546, 548-49 (Tex. 1985); Tex. R. Civ. P. 166a. In deciding if a disputed material
fact issue exists precluding summary judgment, evidence favorable to Anchor will be taken as true
with every reasonable inference indulged in its favor. See Nixon, 690 S.W.2d at 548-49.

 A central issue in this dispute is whether Kachina had an "interest" in the well,
permitting it to be the operator under the joint operating agreement. Article V.B.1. of the joint
operating agreement provides:



If Operator terminates its legal existence, no longer owns an interest in the
Contract Area, or is no longer capable of serving as Operator, it shall cease to be
Operator without any action by Non-operator, except selection of a successor. 
Operator may be removed if it fails or refuses to carry out its duties hereunder, or
becomes insolvent, bankrupt or is placed in receivership . . . . A change of a
corporate name or structure of Operator or transfer of Operator's interest to any
single subsidiary, parent or successor corporation shall not be the basis for removal
of Operator.


(Emphasis added.) Anchor argues that there is a material dispute as to whether Kachina ever
owned an interest in the well so as to permit it to be the operator.

 The summary-judgment evidence includes the affidavit of Steve Grimes, an
independent landman, who reviewed the oil and gas records of Fayette County concerning the
well. Grimes concludes, "[T]here is no instrument of record in Fayette County, Texas from
January 1, 1980 to February 11, 1993 assigning an interest in any oil and gas lease covering the
lands referred to as the Triangle K Prospect from any entity into the following: K-N Operating
Corp.; MGN Oil & Gas Corp.; Kachina Oil & Gas, Inc."

 There is also an affidavit from Alfred Pampell, president of Anchor, stating that
Kachina had represented to him that it was the duly-appointed operator of the well under the
operating agreement. In response to his request to furnish evidence that it was the duly-appointed
operator, Kachina provided a copy of a letter agreement from CRB to K-N. This letter
agreement, however, stated that while K-N would be the contract operator, CRB would continue
to be named operator under the joint operating agreement. (2) Pampell's affidavit further states that
"K-N, MGN and Kachina owned no interest in the Contract Area," prohibiting any of them from
being an operator under the terms of the agreement.

 Kachina's summary judgment proof contains two affidavits of W. B. Newberry,
Jr., Vice President of Kachina. In one he states that while CRB initially subcontracted with K-N
in 1983 to operate the well, full operatorship was transferred to K-N on March 15, 1986 by
CRB's bankruptcy trustee. Further, he states that "K-N transferred operations to an affiliate with
the same management, Kachina Oil & Gas, Inc.," in September 1990 and that Kachina "has acted
as operator since that date." In his second affidavit, he characterized K-N, MGN, and Kachina
as "wholly owned by one or more of the members of the Newberry family and all are managed
by members of the Newberry family." The record also includes copies of three P-4 forms
submitted to the Railroad Commission notifying the Commission that CRB transferred operating
responsibility to K-N, K-N to MGN, and eventually MGN to Kachina.

 From this summary judgment record, we conclude that Kachina has not met its
burden of proof that there is no genuine issue of material fact and that it is entitled to judgment
as a matter of law. Under the operating agreement, Kachina could only be the operator if it
owned an interest in the well or was a subsidiary, parent, or successor corporation of the original
operator, CRB. The affidavits of Grimes and Pampell dispute that Kachina ever owned an interest
in the well. While Newberry's affidavits offer an explanation for why Kachina was acting as
operator, they do not prove conclusively that Kachina is entitled to be declared operator under the
terms of the agreement. Further, although the Newberry affidavits attempt to explain the chain
of transfer of operations for the well, they do not establish conclusively that Kachina is a
"subsidiary, parent or successor corporation" for CRB, the original operator, as required by the
agreement. (3)

 Likewise, the Railroad Commission P-4 forms are not conclusive. Anchor also
submitted a P-4 designating itself as operator without Kachina's signature. Although the
Commission did not accept Anchor's P-4, correspondence in the record from the Commission
offers the explanation. Dave Clarkson, hearings examiner with the legal division, wrote to the
parties explaining the Commission's position: "[T]he Legal Division is of the opinion that the
right to be designated operator of the [well] centers on resolution of a private contract
dispute. . . . [T]his issue should be resolved by the parties or decided by the courts prior to any
further action on Anchor Operating Co.'s Form P-4." Clarkson also concluded that "[n]othing
in this decision of the Legal Division should be construed as a decision of the Commission as to
the validity of the claim of either party to title or the contractual right to operate this lease."

 Interestingly, the trial court itself recognized the existence of this material factual
dispute concerning Kachina's interest. The trial court's unusual summary judgment order includes
a section entitled "disputed fact issues." In this section, the order states that the most significant
disputed fact issues include whether Kachina owned an interest in the well. Even if the summary-judgment evidence predominates in favor of Kachina, it is clear that Anchor has presented
conflicting evidence on this material issue. It is not the purpose of the summary judgment rule
to provide trial by affidavit, but rather to provide a method of summarily terminating a case when
it clearly appears that only a question of law is involved and that there is no genuine issue of fact. 
Gaines v. Hamman, 358 S.W.2d 557, 563 (Tex. 1962). The record in this case does not support
summary judgment. Consequently, we must sustain Anchor's second point of error. (4)



CONCLUSION


 We reverse the trial court's summary judgment and remand the cause to the trial
court for further proceedings.



 J. Woodfin Jones, Justice

Before Chief Justice Carroll, Justices Aboussie and Jones

Reversed and Remanded

Filed: June 21, 1995

Do Not Publish

1.   Anchor specifically requested declaratory judgment that it was the operator of the
well and that Kachina was not the operator. Additionally, Anchor sought an accounting,
damages, and attorney's fees.
2.   The May 19, 1983 letter agreement was also included in the summary-judgment
evidence. It states: "Upon the effective date of this Letter Agreement, K-N would take
over operation of the wells as a contract operator, i.e., CRB would continue to be
operator under the various applicable joint operating agreements or joint venture
agreements, but CRB would by this Letter Agreement contract for the services of K-N in
certain specific areas."
3.   Kachina also argues that it has an "interest" in the well because of a provision in the
operating agreement granting the operator a lien on the property to secure performance
on the non-operators' obligations. Kachina contends that Anchor's default in paying
operating expenses conferred on Kachina a lien on the well. This, of course, presupposes
that Kachina was the duly-appointed operator under the joint operating agreement in the
first place. If, as Anchor argues, Kachina never owned an interest in the well, precluding
its appointment as operator, Kachina could not take advantage of the "operator's lien"
provision of the agreement to bootstrap itself into owning an "interest" in the well.
4.   In its first point of error, Anchor asserts that the trial court erred in failing to make
findings of fact and conclusions of law after proper request. Not only is it well
established that findings of fact and conclusions of law have no place in a summary
judgment proceeding, Linwood v. NCNB Texas, 885 S.W.2d 102, 103 (Tex. 1994), but here
the trial court did eventually make findings and conclusions, which have been brought to this
Court in a supplemental transcript. We overrule point of error one. In its third point of error,
Anchor asserts that the trial court erred in awarding excessive attorney's fees. Because we
reverse the summary judgment and remand the cause, we need not address this complaint.