**TRIOMPHE INVESTORS, an Ohio General Partnership, James D. Haynes, individually and as a General Partner, Steven J. Linsenmeyer, individually and as a General Partner, and Jan Linsenmeyer, individually and as a General Partner, Plaintiffs,**

v.

**CITY OF NORTHWOOD, James Crane, Patricia Belknap, John Melnyk, Raymond Lark, and John E. Blair, Defendants.**

No. 3:90–CV–7431.

United States District Court, N.D. Ohio, W.D.

Oct. 29, 1993.

Ralph Denune, III, Denune & Killiam, Sylvania, OH, for plaintiffs.

Jack Zouhary, Robinson, Curphey & O'Connell, Toledo, OH, for defendants.

*OPINION AND ORDER*

ZATKOFF, District Judge, sitting by designation.

## I. INTRODUCTION

This matter arises out of defendants'[1] denial of a special use permit which would have

---

**1.** The individual defendants were elected members of the City of Northwood's City Council. These defendants have been sued both in their individual and official capacities. However, when such defendants are sued in their official capacities, the suit actually is against the munici-

permitted plaintiffs to build condominiums on a certain ten acre parcel of land. Currently before this Court are defendants' motion for summary judgment and plaintiffs' motion for summary judgment. Each side has submitted their respective response and reply briefs, along with voluminous exhibits. Pursuant to the Local Rules of this District, this Court will dispense with oral argument on these motions. L.R. 8:8.1(g). For the reasons set forth below, the individual defendants' motion for summary judgment on plaintiffs' federal claims (count I) shall be granted and the defendant City of Northwood's motion for summary judgment on plaintiffs' federal claims shall be denied. With respect to plaintiffs' motion for summary judgment, the motion shall be denied as to plaintiffs' federal claims (count I) and this Court shall grant summary judgment in favor of defendant City of Northwood on these claims. In light of these rulings, dismissing all of plaintiffs' claims arising under federal law, this Court will dismiss without prejudice plaintiffs' pendent state law claims. *See* 28 U.S.C. § 1367(c)(3).

## II.  BACKGROUND

As noted above, this case arises out of the City of Northwood City Council's ("City Council") denial of plaintiffs' application for a special use permit for a certain parcel of land. On March 20, 1972, the City of Northwood changed the zoning for a sixty acre piece of real estate from "A-agricultural and Rural Residential" to "R–Suburban Residential." On February 21, 1973, the City of Northwood decided to issue a special use permit, allowing one hundred and ten condominium units to be constructed on this parcel of land. However, the special use permit restricted the area within which these condominium units could be built to a ten acre section of the land. Only twenty-three units were built. In addition, paved roads, curbs,

and a sewer and water system were constructed.

In March 1987, plaintiffs in the instant action purchased the sixty acre parcel from the Chrysler Corporation. One condition of the sale was for the parcel to be officially divided into a ten acre plot and a fifty acre plot. In addition, the purchase agreement for the ten acre parcel states that plaintiffs intended to build condominium units on the ten acre parcel. However, the purchase agreement was not made contingent upon plaintiffs obtaining a special use permit to build the condominiums.[2] It also is evident from the purchase agreement that plaintiffs were represented by counsel when they entered into this purchase agreement.

On September 26, 1988, plaintiffs filed an application for the issuance of a special use permit, to build condominium units on the ten acre parcel, with the City of Northwood Planning Commission ("Planning Commission"). On October 13, 1998, the City Council met and decided to refer this matter to the Planning Commission. After a series of discussions between the Planning Commission and plaintiffs, and plaintiffs modifying their construction plans, the Planning Commission recommended that the application for a special use permit be denied.

May 11, 1989, the City Council voted to deny plaintiffs' application for the following reasons: (1) water problems and poor maintenance of the existing constructed condominiums; (2) the value of the units were too low for the neighbors; (3) the concern that if the units did not sell, the units would become rental properties; and (4) the lack of a recreational area. On May 12, 1989, the City Attorney for Northwood wrote a letter inviting plaintiffs to reapply for a special use permit after plaintiffs had addressed the problems outlined above.

On May 31, 1989, plaintiffs reapplied and the City Council once again referred the

---

pality, and the municipality is the real party in interest. *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) ("Official-capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' ... As long as the government entity receives notice and an opportunity to respond, an official-capac-

ity suit is, in all respects other than name, to be treated as a suit against the entity.") (citation omitted).

**2.** Under a City of Northwood Ordinance, condominiums only may be constructed if a special use permit has been issued.

matter to the Planning Commission. There is no dispute that the revised plans conformed to all of the zoning requirements. Furthermore, plaintiffs' attorney informed the City of Northwood, via a letter dated June 29, 1989, that it would not be economically feasible to rent the condominiums if they did not sell. The Planning Commission, on July 10, 1989, recommended that plaintiffs' application for a special use permit to construct condominium units be denied. The matter once again came before the City Council on August 24, 1989.

Section 1266.13 of the Northwood City Code provides the criteria that the City Council must consider in deciding whether to issue a special use permit. Section 1266.13 states that in order for a special use permit to issue the City Council must find that:

(a) The special use is necessary or desirable for the public convenience at that location;

(b) The special use is so designed, located and proposed to be operated that the public health, safety, and welfare will be protected;

(c) The special use will not cause substantial injury to the value of other property in the neighborhood in which it is to be located; and

(d) The special use conforms to the applicable regulations of the district in which it is to be located, including yard and height restrictions, and also conforms to the requirements for off-street parking as set forth in Section 166.05. . . .

In addition, once the City Council decides that the criteria set forth above has been satisfied, § 1266.09 provides that the City Council *may* grant the special use permit.

At the August 24, 1989 City Council meeting, persons who lived in the neighborhoods surrounding the proposed building site, expressed concern that the lower priced condominiums would adversely affect the value of the neighboring property. In addition, it was apparent that the City Council was troubled by the lack of maintenance and care in the existing units. After reading the application three times, the City Council, without expressing any precise reasons, denied plaintiffs' second application for a special use permit.

Plaintiffs then appealed this denial to the Court of Common Pleas of Wood County, Ohio. The Court of Common Pleas held that the criteria set forth in Section 1266.13 of the City Code was satisfied by plaintiffs. Specifically, the Court of Common Pleas concluded that the only reason the City Council denied plaintiffs' application was because the proposed condominium project allegedly would cause substantial injury to the value of the neighboring property. The Court of Common Pleas stated that:

Injury to property value was an issue circumstantially discussed at Plan Commission & Council meetings. City officials were concerned about lack of maintenance and care for the existing multi-family units on the premises. Neighbors expressed concern that lower priced units as proposed would negatively affect their property value. However, there was no evidence that the new project proposed would negatively affect values of adjoining properties.
. . . .

Therefore, the Court finds the project herein meets the criteria set forth in the code. Council and the Commission meetings have not addressed issues with any intensity except for criteria c [impact on value of neighboring property] which was aggressively dealt with by the developer. There was a distinct absence of substantial inquiry into subsections a), b), & d) requirements.

Court of Common Pleas Opinion at 5–6.

The Court of Common Pleas then ordered that the special use permit be issued to plaintiffs. The City appealed this decision to Court of Appeals for Wood County ("Court of Appeals"). The Court of Appeals affirmed the Court of Common Pleas holding, based on the finding "that the trial court correctly determined that there was no evidence to support the city's concerns that property values would lessen." Court of Appeals Opinion at 1. It is important to note that the standard applied by the Ohio courts was whether the City Council's decision was "supported by the preponderance of substantial, reliable and probative evidence." Ohio Rev.Code

Ann. § 2506.04 (Anderson 1991). *See also* Court of Appeals Opinion at 5 (and cases cited therein). Specifically, the Court of Appeals stated that:

> The record before the trial court fails to include any evidence that the proposed development would substantially impair the value of neighboring property. There were unsworn statements made by people at the administrative hearings who were "concerned" about property values, but there was absolutely no evidence that the concerns had any basis in fact. When a decision is made based on expressed but unsubstantiated concerns, then the decision is not based on reliable and probative evidence. Our review of the record reveals no substantial, reliable and probative evidence that the proposed use of the property would in any way harm the public health, safety or welfare of the community. Even in the more formal arena of the court of common pleas, the only "evidence" was that some people were opposed to the development.[3] Indeed the development is generally in harmony with current uses because the neighborhood now includes multi-family dwellings. Under these circumstances, we must conclude, as did the trial court, that the city council of Northwood arbitrarily denied the permit without any evidence to support that decision.

Court of Appeals Opinion at 6–7.

Although the Court of Appeals affirmed the Court of Common Pleas decision, the Court of Appeals remanded the matter to City Council in order for the City Council to determine if any restrictions should be placed on this special use permit. However, by the time the City Council issued the special use permit to plaintiffs, plaintiffs were not in a position financially to build the condominiums. Plaintiffs ended up having to sell the property in issue.

Plaintiffs instituted this action in federal court on August 21, 1990, advancing four theories of recovery: (1) a just compensation takings claim (count I); (2) a procedural due process claim (count I); (3) a substantive due process claim (count I);[4] and (4) tortious interference with a contract under Ohio law. As noted above, this matter now is before this Court on defendants' motion for summary judgment, as well as plaintiffs' motion for summary judgment.

## III. DISCUSSION

### A. STANDARD OF REVIEW

Defendants and plaintiffs filed their respective motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Under Rule 56, summary judgment is appropriate only where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 243, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). In applying this standard, the Court must view all materials offered in support of a motion for summary judgment, as well as all pleadings, depositions, answers to interrogatories, and admissions properly on file in the light most favorable to the non-moving party. *Id.* 477 U.S. at 247, 106 S.Ct. at 2510.

---

3. The recording device failed to operate properly at the City Council meeting when plaintiffs' renewed application for a special use permit was denied. As a consequence, the Court of Common Pleas took testimony as to what occurred at the City Council meeting.

4. This Court will refer to these first three claims as plaintiffs' "federal claims," because these claims all arise under the United States Constitution, and are brought pursuant to 42 U.S.C. § 1983. Plaintiffs have withdrawn their procedural due process claim wherein they contend that the denial of the special use permit destroyed the value of the property to such an extent that its amounts to a taking by eminent domain without due process of law and the relief to be accorded plaintiffs was the invalidation of the zoning decision. *See Pearson v. City of Grand Blanc,* 961 F.2d 1211, 1215–16 (6th Cir.1992).

Plaintiffs also allege in count I of their first amended complaint that all defendants, by their actions in this case, violated Article I, § 19 of the Ohio Constitution. Neither plaintiffs nor defendants addressed this claim in their respective motions. However, as this Opinion dismisses all of plaintiffs' federal claims, plaintiffs' claim under the Ohio Constitution will be dismissed without prejudice. *See* 28 U.S.C. § 1367(c)(3).

## B. PLAINTIFF'S FEDERAL CLAIMS

### 1. Defendants' Motion For Summary Judgment

#### a. Absolute Immunity

■ Defendants first argue that they are entitled to absolute immunity because the City Council was acting in its "legislative capacity" when it denied plaintiffs' application for a special use permit. *See Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir.1989) ("local legislatures are protected by absolute immunity when they act in their legislative capacities."); *Haskell v. Washington Twp.*, 864 F.2d 1266, 1277–78 (6th Cir.1988). Defendants' argument is not well taken in two respects.

First, the Court of Appeals for Wood County, in its decision affirming the Court of Common Pleas, stated that:

> This case is somewhat unusual in that the authority to grant or deny a special use permit is given by the Northwood Planning and Zoning Code to city council, not the Northwood Planning and Zoning Commission which is an administrative agency. However, it had been held that the actions of a legislative body such as a city council may be subject to review in the same manner as those of an administrative body if the council acts in an administrative or quasi-judicial capacity.... *Appellant city has conceded that the city council, when considering an application for a special use permit, acts in an administrative or quasi-judicial capacity. Our review, then, shall be as though the city council were in fact an administrative agency and not a political or legislative body.*

Court of Appeals Opinion at 4 (emphasis added).

Second, even without considering this prior statement by the Ohio Court of Appeals, it is clear that under Sixth Circuit case law defendants were not acting in their legislative capacity when they denied plaintiffs' application for a special use permit. As explained in *Haskell, supra*, "[i]f the underlying purpose of zoning activity is to establish general policy, it is legislative.... If however, the action singles out specific individuals and affects them differently from others, it is ad-

ministrative." *Haskell*, 864 F.2d at 1278 (citations omitted) (internal quotation marks omitted).

One of the cases cited by the *Haskell* Court was *Scott v. Greenville County*, 716 F.2d 1409 (4th Cir.1983). The plaintiff in *Scott* brought suit against various defendants, including the city council, claiming that his constitutional rights had been violated when the city council wrongfully withheld a building permit for low-income housing. *Id.* at 1411. In holding that the members of the defendant city council acted in a non-legislative capacity when ruling on the plaintiff's building permit, the Fourth Circuit stated that "[w]hen local zoning officials do more than adopt prospective, legislative-type rules and take the next step into the area of enforcement, they can claim only the executive qualified immunity appropriate to that activity.[ ]" *Id.* at 1423 (footnote omitted).

In the case at bar, the City Council members, like the city council members in *Scott*, took the next step into the area of enforcement of zoning rules, when the City Council acted upon plaintiffs' renewed application for a special use permit. Thus, defendants are not entitled to absolute immunity in the case bar, because they were not acting in their legislative capacity.

#### b. Qualified Immunity

■ Defendants also argue that they are entitled to summary judgment based on the doctrine of qualified immunity. All the parties agree as to the law that is to be applied to defendants' qualified immunity claim. First, this Court must consider whether defendants violated a clearly established right when they denied plaintiffs' application for a special use permit. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Second, this Court must determine, as a matter of law, whether a reasonable person under the same circumstances would have known that his or her conduct violated plaintiffs' clearly established right. *Anderson v. Creighton*, 483 U.S. 635, 639–40, 107 S.Ct. 3034, 3038–3039, 97 L.Ed.2d 523 (1987).

The parties fail to address, however, the scope of qualified immunity. First, qualified immunity does not apply to a municipality,[5] and thus, the City of Northwood is not entitled to summary judgment on the grounds of qualified immunity. Second, qualified immunity only attaches to the individual defendants when they are sued in their individual capacity. *Harlow, supra.* Here, the individual council members have been sued in both their individual and official capacities, and thus their qualified immunity defense only pertains to their personal liability. As noted above, the suit against the City Council members in their official capacities, is a suit against the City of Northwood itself.

Finally, it is critical to isolate the precise constitutional violation plaintiffs are claiming here. Plaintiffs have dropped their due process claim, in light of the relief obtained in state court. This leaves us with plaintiffs' claim for taking of property without just compensation and plaintiffs' claim based on substantive due process. With respect to the individual defendants' qualified immunity argument, plaintiffs rely exclusive on their substantive due process claim. Moreover, before reaching the merits of any qualified immunity claim, it is the duty of this Court to determine whether the action taken by the individual City Council members was sufficient to constitute a violation of plaintiffs' substantive due process rights. *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277, 287 (1991); *Silver v. Franklin Twp. Bd. of Zoning Appeals,* 966 F.2d 1031, 1035 (6th Cir.1992).

Here, the individual council members do not dispute that plaintiffs had a clearly established constitutional right at the time the decision was made denying plaintiffs' application for a special use permit: plaintiffs had a clearly established right not to be subject to an arbitrary or an irrational zoning decision. *See, e.g., Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 429 U.S. 252, 263, 97 S.Ct. 555, 562, 50 L.Ed.2d 450 (1977) (citation omitted). As recently explained by the Sixth Circuit:

To establish a violation of substantive due process, a plaintiff must first establish the existence of a constitutionally-protected property or liberty interest." Thus, before [plaintiffs] can establish a violation of substantive due process [they] must demonstrate that [they] had a property interest in the use of the ... [ten acre] parcel as a condominium complex. To do this, [plaintiffs] must prove that [the City Council] did not have the discretion to deny [plaintiffs'] use of the land as a condominium complex if [they] complied with certain minimum, mandatory requirements.... If the [City Council] had the discretion to deny [plaintiffs] a [special use permit] for a condominium complex even if [they] complied with certain minimum, mandatory requirements, the [plaintiffs] would not have a "legitimate claim of entitlement" or a "justifiable expectation" in the approval of [their application.]

*Silver,* 966 F.2d at 1036 (citation omitted).

The *Silver* Court examined whether the plaintiff had either a legitimate claim of entitlement or a justifiable expectation in the approval of a condominium plan, where the applicable zoning regulations provided that such a plan could be approved if its use was deemed desirable. In addition, the board of zoning appeals in *Silver* had to consider:

whether the proposed use [wa]s (1) *harmonious* and *appropriate* in appearance with the existing or intended character of the general vicinity; (2) *hazardous* or *disturbing* to existing or future adjoining neighborhoods; or (3) *detrimental* to the property in the immediate vicinity.

*Id.* (emphasis in original). The *Silver* Court found "that the Zoning Resolution as a whole g[ave] the Board broad discretion to issue a conditional zoning certificate even if the property owner can demonstrate that the use is conditionally permitted under the Zoning Resolution." *Id.* Based on this conclusion, the court held that the plaintiff in *Silver* "possessed neither a legitimate claim of entitlement to the zoning certificate nor a justifiable expectation that the Board would issue

---

**5.** *Owen v. City of Independence,* 445 U.S. 622, 638, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673 (1980) ("We hold ... that the municipality may not assert the good faith of its officers or agents as a defense to liability under § 1983.").

the certificate." *Id.* As a consequence, the plaintiff did not have a property interest that could support a substantive due process claim. *Id.*

In the case at bar, this Court finds that plaintiffs possessed neither a legitimate claim of entitlement to the special use permit nor a justifiable expectation that the City Council would issue the special use permit. As stated above, the relevant zoning regulation provided that "a special use permit *may* be granted in any of the established zoning districts" (§ 1266.09), if:

(a) The special use is necessary or desirable for the public convenience at that location;

(b) The special use is so designed, located and proposed to be operated that the public health, safety, and welfare will be protected;

(c) The special use will not cause substantial injury to the value of other property in the neighborhood in which it is to be located; and

(d) The special use conforms to the applicable regulations of the district in which it is to be located, including yard and height restrictions, and also conforms to the requirements for off-street parking as set forth in Section 166.05....

§§ 1266.09 (emphasis added) & 1266.13.

This Court finds that this zoning regulation does not vest plaintiffs' with a legitimate claim of entitlement that the special use permit would issue. Plaintiffs' argue that § 1266.13 does not give the City Council any discretion once the City Council has determined that the four criteria list in that Section have been met. However, § 1266.09 provides the City Council with such discretion. As noted above, § 1266.09 states that "a special use permit *may* be granted in any of the established zoning districts." (emphasis added). The use of the word "may" provides sufficient discretion to undercut any

argument that the language of the zoning regulations vested in plaintiffs an entitlement to the special use permit being issued once the four factors in § 1266.13 were fulfilled.

Plaintiffs also claim, based on the prior issuance of a special use permit to build condominiums on this same piece of property in the early 1970's, that they had a justifiable expectation that a special use permit would be issued, and thus they have a protected interest.[6] Plaintiffs rely on *Nasierowski Brothers Inv. Co. v. City of Sterling Heights,* 949 F.2d 890 (6th Cir.1991), in support of their conclusion that they have a protected property interest in the special use permit being approved. *Nasierowski* is distinguishable, however, in many important aspects.

First, the plaintiff in *Nasierowski* relied upon the City's representation that the subject parcel of land was within the "general business district" zoning classification when the plaintiff purchased the property. *Id.* at 891. Here, plaintiffs did not rely on any express representation by the City of Northwood that a special use permit would be issued for them to build more condominium units on this piece of property. Second, as stated by the *Nasierowski* Court:

First, and perhaps foremost, [the plaintiff] expressly conditioned the purchase of the property on his obtaining a favorable zoning opinion from the City. It is clear that Nasierowski would *not* have purchased the land unless the City had first advised him that, as of right, he was authorized to develop the parcel along the proposed lines.

*Id.* at 897. In the case at bar, conspicuously absent from the purchase agreement was a clause making the purchase of the land contingent upon plaintiffs obtaining a special use permit. It is clear that plaintiffs intended to build condominiums on this piece of property, based on the fact that some condominiums already had been built on this piece of property. This is insufficient, however, to estab-

---

**6.** Plaintiffs also underscore the point that it was the City of Northwood that invited plaintiffs to reapply as soon as certain problems were addressed. However, a similar argument was implicitly rejected by the court in *Silver,* 966 F.2d at 1032, 1036 (holding that plaintiffs did not have a property or liberty interest in a conditional zon-

ing permit, notwithstanding the fact that after the planning commission refused to issue the permit, the commission informed the plaintiff that 14 issues had to be addressed before the commission would reconsider the proposal and plaintiffs sufficiently addressed these problems).

lish a property or liberty in plaintiff in having the special use permit granted.

In addition, the prior special use permit was approved approximately 15 years before plaintiffs' applied for their special use permit. While this Court does not question that plaintiffs' assumed such permit would issue again, this Court cannot state that plaintiffs had a justified expectation in the City Council issuing a special use permit. This is especially true where, as here, there were substantial problems with the original development.

Therefore, this Court finds that plaintiffs' did not have either a property or a liberty interest in being able to use the ten acre parcel to construct new condominium units. Therefore, there has been no violation of plaintiffs' substantive due process rights in the case bar.

Assuming, for the sake of completeness, that plaintiffs' did have either a property or a liberty interest in building condominiums on this piece of property, this Court finds that plaintiffs have not suffered a *violation* of a clearly established constitutional right. As noted above, the parties agree that plaintiffs' had a clearly established right to be free from arbitrary and irrational zoning decisions. *Village of Arlington Heights, supra.* The question thus becomes whether this constitutional right was violated. For the reasons to follow, this Court concludes that this constitutional right was not violated in the case at bar.

In order to prove a constitutional violation based on a zoning decision, a plaintiff must prove that the decision was " 'arbitrary and capricious ...' in the *strict* sense, meaning 'that there is no rational basis for the ... decision.' " *Pearson v. City of Grand Blanc,* 961 F.2d 1211, 1221 (footnote and citations omitted). As the *Pearson* Court explained:

> The use of the term "arbitrary and capricious" in this context causes considera-

ble confusion, because these same terms are also used to describe the scope of review by state courts of state administrative action.[ ] Therefore, it must be emphasized that the state court scope of review of a decision of a state administrative agency is far broader than the federal scope of review under substantive due process.

> In some states, a state court may set aside state administrative action as being "arbitrary and capricious" on the grounds, among others, *that it is not supported by substantial evidence.*[ ] No such ground may be used by the federal court in reviewing state administrative action in connection with a federal substantive due process attack, however. In the federal court the standard is a much narrower one.[ ] *The administrative action will withstand substantive due process attack unless it "is not supportable on any rational basis" or is "willful and unreasoning action, without consideration and in disregard of the facts or circumstances of the case."*[ ]

*Pearson,* 961 F.2d at 1221 (footnotes, citations, and internal quotation marks omitted) (emphasis added).[7]

■ Plaintiffs make a two-fold argument in support of their conclusion that their constitutional right to be free from arbitrary and irrational zoning decisions was violated when the City Council refused to grant plaintiffs' application for a special use permit. First, plaintiffs argue that the Ohio courts' decisions in this case have collateral estoppel effect on this claim. Plaintiffs' argument is not well taken.

As plaintiffs noted in their brief in support of their motion for summary judgment, under Ohio law, collateral estoppel "precludes the relitigation, in a second action, of an issue actually and necessarily litigated and determined in a prior action where all the parties in the first action are parties in the second action. Although the cause of action differs, the prior judgment precludes relitigating the

---

7. The *Pearson* Court also noted that:

> [I]t is extremely rare for a federal court properly to vitiate the action of a state administrative agency as a violation of substantive due process. The vast majority of such attacks may readily be disposed of on summary judg-

ment ... thus keeping interference by federal courts with local government to a salutary minimum. Review of state administrative action is primarily a matter for state courts, which quite properly have a much broader scope of review under state law.[ ]

*Pearson,* 961 F.2d at 1222–23 (footnote omitted).

same issue in the second suit." Plaintiffs' brief in support at 7 (citations omitted). Of special importance to the issue before this Court, is the requirement that the issue previously decided was actually and necessarily litigated and determined in the prior action.

The requirement is not satisfied in this action. The issued determined by the Ohio courts was whether there was substantial, probative, and reliable evidence to support the City Council's decision not to issue the special use permit. While it is clear that this issue was *determined* by the Ohio courts, it is equally clear that this is not the issue before this Court. As set forth above, the issue before this Court is whether the administrative action was not supported on any rational basis or was willful and unreasoning action, without consideration and in disregard of the facts or circumstances of the case. Again, as noted above, the federal review of such action is much narrower than state court review.

Thus, while a federal court determination that a zoning decision violated a plaintiff's substantive due process rights to be free from arbitrary and irrational zoning decisions, *a fortiori* means that such a zoning decision would fail under a less stringent state court review, the opposite is not true. In other words, the issue of whether the City Council's action was either not supported by any rational basis or was willful and unreasonable action, taken without consideration and in disregard of the facts and circumstances of the case, was not an issue actually and necessarily litigated and determined in the Ohio courts. Therefore, the Ohio courts' determination do not have collateral estoppel effect on the litigation presently before this Court.

■ Plaintiffs' second argument is that the facts in this case show that plaintiffs have suffered a violation of their substantive due process rights. Within this argument, plaintiffs rely on two separate grounds. First, plaintiffs contend that City Council's decision was not supported by any rational basis. Although the only facts before the City Council were expressed, but unsubstantiated concerns, regarding how the new development was going to adversely affect the value of the neighboring property, this Court finds

that this constitutes a rational basis for the City Council's decision. *See Pearson,* 756 F.Supp. 314, at 318 (E.D.Mich.1991), *affirmed,* 966 F.2d at 1224 (affirming the grant of summary judgment in favor of the defendant on the plaintiff's substantive due process claim, where the deposition of the members of city council revealed that the city council was not swayed by hard evidence that the proposed plan would have an adverse impact on the health, safety, and welfare of the city, rather the city counsel was swayed by complaints of citizens regarding traffic problems and over developed commercialization).

Plaintiffs also argue that the decision was a willful and an unreasonable action, taken without consideration, and in disregard, of facts or circumstances of the case. The underpinning of plaintiffs' argument is that the City Council failed to consider to criteria set forth in § 1266.13; criteria that the City Council is mandated to examine. Plaintiffs assert that the Ohio courts have declared that the City Council failed to employ the criteria set forth in § 1266.13, and thus they acted willfully, unreasonably, and in disregard of the facts or circumstances in this case. This Court disagrees with plaintiffs' reading of the state court opinions.

The state courts did not state that the City Council failed to examine the requisite criteria. The state courts noted that the only factor which the City Council addressed was the affect the proposed project had on the value of the neighboring properties. In a situation where a decision making body finds that one of several facts that must be satisfied, is not satisfied, it is quite rational and reasonable for that decision making body only to address that one precise factor. There is no evidence that the City Council failed to utilize the appropriate zoning regulation here. Therefore, this Court finds that the City Council's decision denying plaintiffs' application for a special use permit was not a willful and an unreasonable action, taken without consideration, and in disregard, of facts or circumstances of the case. Thus, plaintiffs cannot show that their substantive due process rights to be free from arbitrary

and irrational zoning was violated by the actions of the City Council in the case at bar.

■ Furthermore, even if plaintiffs' can show that their clearly established right has been violated, it is the opinion of this Court that a reasonable person in the same position as the members of City Council would not have known that they were violating plaintiffs' clearly established constitutional right. Accordingly, the defendants sued in their individual capacities have qualified immunity in this case. Therefore, the individual defendants' motion for summary judgment is GRANTED.

### c. Good–Faith Immunity under Ohio Law

■ The City next argues that it has immunity from plaintiffs' federal claims based on Ohio's good-faith immunity defense established in *C & D Partnership v. Gahanna,* 15 Ohio St.3d 359, 364, 474 N.E.2d 303 (1984). This argument is without merit. As noted by plaintiffs' in their response brief to defendants' motion for summary judgment, in *Potter v. Troy,* 78 Ohio App.3d 372, 604 N.E.2d 828, 837 (1992), the Ohio Court of Appeals held that "[t]he effect of [Ohio Revised Code] ... § 2744.03, with the exception of the common law immunity preserved by ... § 2744.-03(A)(7), is to abrogate all other immunity provided under common law." Subsection (A)(7) preserves common law immunity for the legal officers of a political subdivision, and thus in not implicated by the facts in the instant case. As a consequence, "good faith" immunity under *C & D Partnership* is no longer a valid defense under Ohio law. Ac-

cordingly, defendant City of Northwood's motion for summary judgment is DENIED.

### 2. Plaintiff's Motion For Summary Judgment

#### a. Substantive Due Process

■ The only remaining defendant in plaintiffs, substantive due process claim is the City of Northwood. For the reasons set forth above, finding that plaintiffs' did not have a protected property or liberty interest and that plaintiffs' did not suffer a violation of their substantive due process rights, plaintiffs' motion for summary judgment on their substantive due process claim is DENIED. In addition, even though defendant City of Northwood did not move for summary judgment on plaintiffs' substantive due process claim on the ground that there are no genuine issues of material fact and defendant City of Northwood is entitled to judgment as a matter of law,[8] this Court will *sua sponte* granted summary judgment in favor of defendant City of Northwood.[9] In light of the aforementioned analysis, this Court finds that there is no genuine issue of material fact with respect to plaintiffs' substantive due process claim and that defendant City of Northwood is entitled to judgment as a matter of law on this claim.[10]

#### b. Taking and Just Compensation Claim

■ This Court finds that plaintiffs' taking claim is not ripe for determination.[11] The law is well settled that "if a state provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation

---

**8.** Defendant City of Northwood moved for summary judgment on the following grounds: (1) absolute immunity; (2) qualified immunity; and (3) good-faith immunity under Ohio law.

**9.** *See Celotex v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) ("district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte,* so long as the losing party was on notice that she had to come forward with all of her evidence.") (citations omitted).

**10.** In light of this holding, this Court need not address defendants' argument that: (1) the Lin-

senmeyers are not real parties in interest under Fed.R.Civ.P. 17(a); (2) that plaintiffs' cannot recover damages outside of the partnership; and (3) that plaintiffs' are not entitled to punitive damages.

**11.** As described by the Sixth Circuit in *Pearson, supra,* in a taking of property without just compensation claim:

[the] plaintiff claims that the zoning applied to his land constitutes a taking of his property without just compensation in contravention of the Fifth Amendment, the remedy sought being the just compensation.
*Pearson,* 961 F.2d at 1215.

Clause until the owner has used the state procedure and been denied compensation." *Silver*, 966 F.2d at 1034 (citations omitted). The only exception to this rule is where the plaintiff can show that the state procedures for obtaining just compensation are inadequate. *Id.* at 1035.

There is no dispute that Ohio law provides a procedure for plaintiffs to seek just compensation on this claim. As the *Silver* Court noted:

> Ohio law provides a procedure for obtaining just compensation for a governmental taking. If a property owner can demonstrate that the enforcement of a zoning regulation results in an unconstitutional taking, the owner may seek mandamus from a state court directing state officials to institute eminent domain proceedings to determine just compensation.

*Id.* (citations omitted).

Plaintiffs allege that the Ohio procedure is inadequate because plaintiffs only will be able to recover for the value of the property and plaintiffs cannot recover for damages which allegedly resulted from the City's interference with a business relationship. That is, plaintiffs are seeking to recover damages suffered outside of the scope of the value of the property.

Plaintiffs argument in unavailing. In a just compensation action in federal court, plaintiffs' recovery under the fifth amendment is as follows:

> "[J]ust compensation" means the full monetary equivalent of the property taken.[ ] The owner is to be put in the same position monetarily as he would have occupied if his property had not been taken.[ ] In enforcing the constitutional mandate, the Court at an early date adopted the concept of market value: *the owner is entitled to the fair market value of the property[ ] at the time of the taking.*[ ]

*United States v. Reynolds*, 397 U.S. 14, 16, 90 S.Ct. 803, 805, 25 L.Ed.2d 12 (1970) (footnotes omitted) (emphasis added).

Therefore, under both Ohio law and fifth amendment law, plaintiffs may only recover for the value of the property. Thus, this Court cannot comprehend how Ohio law does not adequately compensate plaintiffs for the alleged taking of their property without just compensation. If plaintiffs desire to obtain damages outside of the value of property at the time of the taking, they must proceed under a different legal theory, which plaintiffs have done in the case at bar by pleading a cause of action for interference with a business relationship.

Accordingly, this Court finds that plaintiffs have not employed the available procedure under Ohio law to obtain relief on their taking of property without just compensation claim. In addition, notwithstanding the fact that plaintiffs have pleaded that this state procedure is inadequate, plaintiffs have not come forward with any convincing evidence that the state procedure actually is inadequate. As a consequence, this Court holds that plaintiffs fifth amendment just compensation claim is not ripe for a determination by this Court. Therefore, this claim will be dismissed without prejudice.

## C. PLAINTIFFS' STATE LAW CLAIMS

### 1. Interference With A Business Relationship

Plaintiffs claim that defendants interfered with a business relationship that plaintiffs had established with a developer is a claim that is based on state law. Because this Opinion has dismissed all of plaintiffs claims brought under federal law, pursuant to 28 U.S.C. § 1367(c)(3), this Court will dismiss this claim without prejudice.

### 2. Plaintiffs' Claim Under The Ohio Constitution

Plaintiffs, in their first amended complaint, allege that defendants' actions also violated Article I, § 19 of the Ohio Constitution. Neither plaintiffs nor defendants briefed this cause of action in their respective motions for summary judgment. This Court likewise will dismiss this claim without prejudice under 28 U.S.C. § 1367(c)(3), in light of the rulings in this Opinion dismissing all of plaintiffs' claims under federal law.

## IV. CONCLUSION

In light of the aforementioned analysis, IT IS HEREBY ORDERED that Defendants Crane's, Belknap's, Melnyk's, Lark's, and Blair's motion for summary judgment on plaintiffs' federal claims is GRANTED;

IT IS FURTHER ORDERED that defendant City of Northwood's motion for summary on plaintiffs' federal claims is DENIED;

IT IS FURTHER ORDERED that plaintiffs' motion for summary judgment is DENIED; however, this Court *sua sponte* GRANTS summary judgment in favor of defendant City of Northwood on plaintiffs' substantive due process claim;

IT IS FURTHER ORDERED that plaintiffs' fifth amendment taking of property without just compensation claim is DISMISSED WITHOUT PREJUDICE;

IT IS FURTHER ORDERED that plaintiffs' claims brought under Ohio law are DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.