Steve **BARTLETT**, Larry Duncan, Charlotte Mayes, Domingo Garcia, Paul E. Fielding, Craig McDaniel, Barbara Mallory, and Donna Blumer, Appellants,

v.

**CINEMARK USA, INC.** and Tinseltown Equities, Inc., Appellees.

No. 05–94–01702–CV.

Court of Appeals of Texas, Dallas.

June 13, 1995.

Opinion Concurring in Denial of Rehearing Aug. 11, 1995.

**232**

Robert F.Robert F. Brown, Terrence S. Welch, Kent S. Hofmeister, Vial Hamilton Koch & Knox, Dallas, Sam A. Lindsay, Walter C. Davis, Assistant City Attorneys, Dallas, for Appellants.

Ernest E. Figari, Jr., Donald Colleluori, Debi L. Davis, Figari & Davenport, L.L.P., Dallas, Steven Baggett, Thompson & Knight, Dallas, for Appellees.

Before CHAPMAN, WHITTINGTON and DEVANY, JJ.

## OPINION

WHITTINGTON, Justice.

Dallas Mayor Steve Bartlett and City Councilmembers Larry Duncan, Charlotte Mayes, Domingo Garcia, Paul E. Fielding, Craig McDaniel, Barbara Mallory, and Donna Blumer ("appellants") appeal the trial court's order denying their motion for summary judgment based on absolute and qualified immunity. In a single point of error, appellants contend the trial court erred in denying them summary judgment. We affirm.

1. A planned development district is used to "provide flexibility in the planning and development of projects with combinations of uses and specific physical designs...." DALLAS DEVELOPMENT CODE, § 51–4.102(c)(1). The purpose of the district is to "achieve flexibility and variety in the physical development pattern of the city, to encourage a more efficient use of open space and to encourage the appropriate use of land." Id. A planned development district is "intended to be applied to the district map as an amendment to the zoning ordinance." Id.

2. Although development plans are generally submitted to the City Plan and Zoning Commission

## FACTUAL AND PROCEDURAL BACKGROUND

On April 17, 1985, the Dallas City Council ("Council") adopted ordinance number 18667. The ordinance created a planned development district ("PD 192") on a twenty-two-acre tract of land located in the City of Dallas.[1] The ordinance incorporated a conceptual plan and required the developer of the property to submit a detailed development plan, complying with the conceptual plan, to the Council within six months of the adoption of the ordinance.[2] Under section two of the ordinance, any use allowed in an SC Shopping Center District[3] was a permitted use on the property (subject to certain exceptions); however, other language in the ordinance and attached conceptual plan suggested the property could only be used for retail and office uses. A theater is a use permitted as of right in an SC Shopping Center District. See DALLAS DEVELOPMENT CODE, § 51–4.200 (use charts).

On October 2, 1985, Lincoln Property Company submitted a detailed development plan to the Council for approval. Following a hearing, the Council voted to adopt the development plan subject to certain modifications. Although the Council conditionally approved the plan, Lincoln Property never submitted a revised plan incorporating the required modifications to the Council. No further action was taken on Lincoln Property's planned development of the property.

Almost eight years later, in September 1993, appellees contracted to purchase the twenty-two-acre tract of land covered by PD 192. In November, appellees had the owner

for approval, see DALLAS DEVELOPMENT CODE, § 51–4.702(c)(4), the ordinance in this case specifically stated that the plan was to be submitted to the Council instead of the plan commission and that Council approval was "in place of" the required plan commission approval.

3. An SC Shopping Center District is a district that provides a "uniform set of standards for modern shopping center development including requirements for screening, off-street parking and building setbacks." DALLAS DEVELOPMENT CODE, § 51–4.102(b)(7).

of the property, Daniel–Lingo & Associates, submit a proposed development plan to the Council for approval. The new plan provided for the construction of an eighteen-screen movie theater and restaurant on the property. In January 1994, the Council voted to reject appellees' development plan, concluding the proposed theater was not a permitted use on the property. Because appellees were unable to obtain the required approvals, appellees lost their contract to purchase the twenty-two-acre tract covered by PD 192.

Shortly thereafter, appellees filed suit in federal court against the City and the seven councilmembers who voted against the development plan. Appellees subsequently dismissed the federal court suit. A few days later, appellees filed this suit against appellants in state court, alleging a cause of action under 42 U.S.C.A. § 1983 (West 1994).[4] Appellees maintained that appellants' decision to reject the development plan was arbitrary and capricious and violated appellees' rights to due process and equal protection under the law. In addition to damages, appellees sought a declaration that the proposed development plan complied in all respects with the zoning ordinance previously adopted by the Council.

Appellants filed a motion for summary judgment, contending they were entitled to absolute or, alternatively, qualified immunity from suit. The trial court held a hearing on appellants' motion. After considering the summary judgment evidence and the arguments of counsel, the trial court denied appellants' motion. This appeal followed. See TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(5) (Vernon Supp.1995) (authorizing interlocutory appeal from denial of summary judgment motion based on immunity).

## STANDARD OF REVIEW

■ The standard for reviewing a summary judgment is well established:

1. The movant for summary judgment has the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, we take the evidence favorable to the nonmovant as true.

3. We indulge every reasonable inference in favor of the nonmovant and resolve any doubts in its favor.

See Nixon v. Mr. Property Mgmt. Co., 690 S.W.2d 546, 548–59 (Tex.1985). We apply the same standard for reviewing the denial of summary judgment as we do for the granting of summary judgment. See Ervin v. James, 874 S.W.2d 713, 715 (Tex.App.—Houston [14th Dist.] 1994, writ denied).

■ To prevail on summary judgment, a defendant as movant must either (1) disprove at least one element of each of the plaintiff's theories of recovery or (2) plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex.1979); Hoover v. Gregory, 835 S.W.2d 668, 671 (Tex.App.—Dallas 1992, writ denied). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc., 644 S.W.2d 443, 446 (Tex.1982).

■ The purpose of the summary judgment rule is not to provide a trial by deposition or affidavit. Rather, the purpose of the rule is to provide a method of summarily ending a case that involves only a question of law or no genuine issue of fact. Gaines v. Hamman, 163 Tex. 618, 358 S.W.2d 557, 563 (1962); Port Distrib. Corp. v. Fritz Chem. Co., 775 S.W.2d 669, 670 (Tex.App.—Dallas 1989, writ dism'd by agr.). The rule is not intended to deprive litigants of their right to a full hearing on the merits of any real fact issue. See Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, 931 (1952).

## IMMUNITY

In their sole point of error, appellants contend the trial court erred in denying their motion for summary judgment. Appellants argue the summary judgment evidence con-

---

4. Appellees filed this suit against appellants only in their individual capacities.

clusively established their right to absolute and/or qualified immunity, and the trial court erred in concluding otherwise. We disagree.

■ Appellees filed suit against appellants under section 1983. Thus, federal law controls the immunity analysis in this case. *See Qualls v. Parrish,* 534 F.2d 690, 694 (6th Cir.1976) (federal law determines adequacy of defenses asserted in section 1983 case); *Bell v. Wolff,* 496 F.2d 1252, 1253 (8th Cir. 1974) (application of immunity under section 1983 cannot be restricted or enlarged by state laws); *Ligon v. State of Maryland,* 448 F.Supp. 935, 947 (D.Md.1977) (scope of immunity enjoyed by local legislators under section 1983 is matter of federal law). Under federal law, two types of immunity are available to persons performing governmental functions: absolute and qualified. *See Owen v. City of Independence,* 445 U.S. 622, 637–38, 100 S.Ct. 1398, 1408–09, 63 L.Ed.2d 673 (1980); *see also Haskell v. Washington Township,* 864 F.2d 1266, 1277 (6th Cir.1988).

■ Determining what type of immunity applies to a particular official in a given case depends on whether the official was acting in a legislative, judicial, or administrative capacity at the time of the subject actions. *See Haskell,* 864 F.2d at 1278; *see also Austin v. Borel,* 830 F.2d 1356, 1359 (5th Cir.1987). This question turns on the nature of the function being performed, rather than on the position or title held by the official. *See Brown v. Griesenauer,* 970 F.2d 431, 437

(8th Cir.1992); *Austin,* 830 F.2d at 1359–60; *Marrero v. City of Hialeah,* 625 F.2d 499, 508 (5th Cir.1980), *cert. denied,* 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981). If the official's actions were either legislative or judicial in nature, the official is entitled to absolute immunity. *See Haskell,* 864 F.2d at 1278. If the actions were administrative, the official is only entitled to qualified immunity. *See Haskell,* 864 F.2d at 1278. We will address the two types of immunity separately.[5]

### Absolute Immunity

■ Federal law recognizes local legislators are entitled to absolute immunity when exercising legislative functions. *See Hughes v. Tarrant County Texas,* 948 F.2d 918, 920 (5th Cir.1991); *Hernandez v. City of Lafayette,* 643 F.2d 1188, 1193 (5th Cir. Unit A May 1981).[6] However, not all actions taken by an official with legislative duties are protected by absolute immunity. Indeed, only those duties that are *functionally* legislative carry with them absolute immunity from suit. *Hughes,* 948 F.2d at 920. Thus, the threshold question we must resolve is whether appellants' actions in voting to deny appellees' development plan were functionally legislative. For the reasons that follow, we conclude they were not.

■ We note initially that the mere fact that the complained-of action occurred by

5. We note that although appellants argue on appeal that they were entitled to summary judgment based on absolute *judicial* immunity as well as absolute *legislative* immunity, they did not raise absolute *judicial* immunity as a ground for summary judgment in the trial court. Appellants' summary judgment motion outlines the issues before the lower court as follows: "1. Whether [appellants] are entitled to absolute *legislative* immunity. [and] 2. Whether [appellants] are alternatively entitled to a qualified immunity." (emphasis added). Appellants did not argue below that they were entitled to absolute judicial immunity in connection with their actions in this case. Additionally, the summary judgment evidence offered in support of their motion does not address this issue. Because appellants failed to raise absolute judicial immunity as a ground for summary judgment in their motion, we conclude they cannot rely on this ground on appeal. *See McConnell v. Southside I.S.D.,* 858 S.W.2d 337, 339 & n. 2 (Tex.1993) (holding that summary judgment motion itself

must expressly present reasons entitling movant to summary judgment). Accordingly, we do not address the applicability of absolute judicial immunity to this case.

6. Although the Supreme Court has not yet spoken on this issue, at least eight federal appellate courts have extended absolute legislative immunity to local legislators performing legislative functions. *See Haskell,* 864 F.2d at 1277; *Aitchison v. Raffiani,* 708 F.2d 96, 98–100 (3d Cir. 1983); *Reed v. Village of Shorewood,* 704 F.2d 943, 952–53 (7th Cir.1983); *Espanola Way Corp. v. Meyerson,* 690 F.2d 827, 829 (11th Cir.1982), *cert. denied,* 460 U.S. 1039, 103 S.Ct. 1431, 75 L.Ed.2d 791 (1983); *Kuzinich v. County of Santa Clara,* 689 F.2d 1345, 1349–50 (9th Cir.1982); *Hernandez,* 643 F.2d at 1193–94; *Bruce v. Riddle,* 631 F.2d 272, 279 (4th Cir.1980); *Gorman Towers, Inc. v. Bogoslavsky,* 626 F.2d 607, 611–14 (8th Cir.1980).

way of a vote does not automatically mean the action is legislative. A number of federal appellate courts have recognized that "[a]lthough a local legislator may vote on an issue, [the act of voting] alone does not necessarily determine that he or she was acting in a legislative capacity." *Brown,* 970 F.2d at 437; *Crymes v. DeKalb County, Ga.,* 923 F.2d 1482, 1485 (11th Cir.1991); *see also Roberson v. Mullins,* 29 F.3d 132, 134 n. 3 (4th Cir.1994) (recognizing that member of local governmental body does not necessarily act in legislative capacity when participation takes form of vote). Because we cannot conclude appellants' actions were legislative solely because they involved a vote, we must look further to determine whether appellants' actions were truly legislative and, thus, covered by the doctrine of absolute immunity.

■ The United States Supreme Court has not outlined any definitive test for determining when a particular action taken by a local official is considered legislative and when it is not. Nevertheless, the Fifth Circuit has adopted two tests to aid in this determination. *See Hughes,* 948 F.2d at 921 (applying tests articulated by First Circuit in *Cutting v. Muzzey,* 724 F.2d 259, 261 (1st Cir.1984)). The first test focuses on the nature of the facts used to reach a given decision. Under that test, if the underlying facts on which a decision is based are "legislative facts," such as generalizations concerning a policy or state of affairs, then the decision is legislative. If, on the other hand, the facts used in the decisionmaking are more specific, such as those that relate to particular individuals or situations, then the decision is administrative. *Hughes,* 948 F.2d at 921. The second test focuses on the "particularity of the impact of the state action." Under this test, if the action involves establishment of a general policy, it is legislative. If it singles out specific individuals and affects them differently from others, it is administrative. *Hughes,* 948 F.2d at 921. Other federal appellate courts have adopted the same or similar tests for determining the scope of absolute legislative immunity. *See, e.g., Roberson,* 29 F.3d at 135; *Brown,* 970 F.2d at 437; *Acevedo–Cordero v. Cordero–Santiago,* 958 F.2d 20, 23 (1st Cir.1992); *Crymes,* 923 F.2d at 1485; *Ryan v. Burling-*

*ton County, N.J.,* 889 F.2d 1286, 1290–91 (3d Cir.1989); *Haskell,* 864 F.2d at 1278; *Cinevision Corp. v. City of Burbank,* 745 F.2d 560, 580 (9th Cir.1984), *cert. denied,* 471 U.S. 1054, 105 S.Ct. 2115, 85 L.Ed.2d 480 (1985).

We find the language and reasoning of these decisions persuasive and, thus, we adopt the two tests announced by the Fifth Circuit in *Hughes* as the appropriate standard by which to judge appellants' actions in this case. Applying these tests, we conclude appellants' actions in voting to deny appellees' development plan were not legislative in nature.

■ Under the first test, we must focus on the "facts" used by appellants in reaching their decision to deny appellees' development plan. Appellants contend they relied on numerous "legislative" facts in making this determination. We disagree. "Legislative" facts are facts that involve "generalizations concerning a policy or state of affairs," and are to be distinguished from facts that relate only to particular individuals or situations. *See Hughes,* 948 F.2d at 921. The "facts" which appellants characterize as "legislative" include the following: (1) whether the plan was properly submitted within the six-month "window" provided by the ordinance; (2) whether a theater was a permitted use on the property; (3) whether the development plan violated the ordinance by authorizing construction of "free-standing restaurants;" (4) whether the development plan complied with the building and height restrictions included in the conceptual plan; and (5) whether the development plan adequately addressed the internal vehicular circulation requirements mandated by the ordinance. We have reviewed these "facts" and, contrary to appellants' suggestions, we do not consider them to be of such general applicability as to constitute "legislative" facts for purposes of an immunity analysis. To the contrary, we believe these facts are more properly characterized as facts affecting a specific situation and specific individuals (*i.e.,* appellees) and, thus, indicative of an administrative action under the first *Hughes* test. *See Zamsky v. Hansell,* 933 F.2d 677, 679 (9th Cir.1991) (monitoring compliance with established laws

or regulations involves "ad hoc decisionmaking" rather than formulation of policy and thus does not amount to legislative activity); *Crymes*, 923 F.2d at 1486 (concluding decision to uphold denial of development permit was not legislative because decision involved application of policy to specific party).

We reach a similar conclusion with respect to the second test outlined in *Hughes*. Under this test, we must consider the "impact" of the particular action at issue. In this regard, the *Hughes* court teaches that it is only when an action involves establishment of a *general* policy of *common* applicability, that the action may be considered legislative. *See Hughes*, 948 F.2d at 921. As the Eighth Circuit recognized in *Brown*, "[l]egislation ... looks to the future and changes existing conditions by making *a new rule to be applied thereafter to all* or some part of those subject to its power." *Brown*, 970 F.2d at 437 (emphasis added). If the action at issue does not involve "formulation of a policy governing future conduct for all or a class of the citizenry," it cannot be classified as legislative for purposes of an immunity analysis. *Brown*, 970 F.2d at 437.

In this case, we note that appellants' actions in voting to deny appellees' development plan did not "look to the future" or establish some "new rule" applicable to all who might desire to develop property covered by PD 192. Quite the contrary. Appellants' decision in this case singled out appellees and made a decision that affected only them individually. The vote did not establish a new rule or law that prohibited construction of theaters on the subject property.[7] Because appellants' decision to deny appellees' development plan did not "formulate a policy governing future conduct" but instead affected only those made a party to appellants' decision, we conclude appellants' actions cannot be classified as legislative under the second *Hughes* test. *See Bateson v. Geisse*, 857 F.2d 1300, 1304 (9th Cir.1988) (concluding councilmembers' decision to withhold building permit not legislative function

because it neither applied to general community nor involved promulgation of legislative policy "as a defined and binding rule of conduct").

We note additionally that, when appellants voted to deny appellees' proposed development plan, they were acting in place of the City Plan and Zoning Commission ("plan commission"). Under the Dallas Development Code, submission of a development plan following adoption of a planned development ordinance with attached conceptual plan is generally to the City plan commission. *See* DALLAS DEVELOPMENT CODE, § 51–4.702(c)(4). In this case, however, the Councilmembers opted to have the development plan submitted to them for approval, and expressly so provided in the ordinance. By so doing, appellants chose to act in place of the members of the plan commission. The functional approach to immunity requires that officials performing identical functions be treated alike. *Austin*, 830 F.2d at 1362–63. The members of the plan commission have no authority to enact legislation; their functions are purely administrative. *See* DALLAS DEVELOPMENT CODE, § 51–3.101. Because the members of the plan commission would not be entitled to legislative immunity for actions taken in connection with the submission of a development plan, we conclude appellants were not so entitled in this case. *See Fralin & Waldron, Inc. v. County of Henrico, Va.*, 474 F.Supp. 1315, 1321 (E.D.Va.1979) (concluding absolute immunity did not extend to planning commission members' actions in refusing to approve development plan).

Additionally, we reject appellants' suggestion that because the ordinance and conceptual plan in this case contained an internal conflict, the actions taken with respect to appellees' development plan did indeed constitute legislation. Appellants point to the conflict between the text of the ordinance, which allows any uses permitted in an SC Shopping Center District, and the conceptual plan, which limits the permissible

---

7. This action is to be distinguished from appellants' initial adoption of the ordinance in this case. Both sides concede that the vote necessary to *enact* PD 192 was a legislative action since it

in fact established a new law covering the subject property. The vote to adopt or reject the development plan, by contrast, had no such long-lasting effect.

uses on the property to retail and office uses. Appellants suggest that because of the internal conflict, they were once again called upon to determine the proper use of the property in light of community needs and desires—and thus were again required to legislate in this case. We disagree. The Dallas Development Code provides that, in the event of a conflict between the text of chapter 51 and any charts or graphic displays included in the chapter, the text controls. DALLAS DEVELOPMENT CODE, § 51–2.101(6). Because the ordinance in this case was incorporated into chapter 51 of the Development Code, *see* DALLAS DEVELOPMENT CODE, § 51–4.702(a)(5) (noting that each PD ordinance is incorporated by reference into chapter 51), we conclude that the rules of construction applicable to the Code would also apply to the ordinance. Thus, the text of the ordinance controls and no further "legislation" would be necessary or authorized in this case. Furthermore, we note that, even if this were not the case, appellants' actions with respect to the development plan were still not "legislative" since appellants' "resolution" of the internal inconsistency did not create a "new rule" or law applicable to all those interested in developing the subject property. *See Brown*, 970 F.2d at 437; *Hughes*, 948 F.2d at 921.

 In reaching our decision, we recognize that zoning is ordinarily a legislative activity. However, it is not always legislative for purposes of immunity. *Haskell*, 864 F.2d at 1278. "When local zoning officials do more than adopt prospective, legislative-type rules and take the next step into the area of enforcement, they can claim only the executive qualified immunity appropriate to that activity." *Hughes*, 948 F.2d at 921 (quoting *Scott v. Greenville County*, 716 F.2d 1409, 1423 (4th Cir.1983)). Courts have routinely recognized a distinction between actions that *establish* a policy, act, or law and those that only involve *enforcing* or *administering* it. *See Hughes*, 948 F.2d at 920. Because we believe appellants' actions in this case more closely resemble enforcement or administration of an existing policy, act, or law, we conclude appellants' actions in voting to deny appellees' development plan were not legislative in nature. *See Triomphe Investors v. City of Northwood*, 835 F.Supp. 1036, 1041

(N.D.Ohio 1993) (concluding city councilmembers not entitled to absolute legislative immunity for actions taken in denying application for special use permit because actions singled out specific individuals and thus involved enforcement, rather than enactment, of zoning laws), *aff'd*, 49 F.3d 198 (6th Cir. 1995). Accordingly, we conclude the trial court properly denied appellants' motion for summary judgment based on absolute legislative immunity.

### Qualified Immunity

 Next, we must consider whether the trial court erred in denying summary judgment based on qualified immunity. Appellees contend the trial court properly denied summary judgment because appellants failed to establish their right to qualified immunity as a matter of law. We agree.

 The doctrine of qualified immunity shields an official performing discretionary functions from liability for damages under section 1983 so long as the official's conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would have been aware. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Austin*, 830 F.2d at 1358. Whether an official can be held personally liable for taking an allegedly unlawful action turns on the "objective legal reasonableness" of the action, assessed in light of the legal rules that were "clearly established" at the time the action was taken. *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987). To be clearly established, the "contours" of the right allegedly violated must be sufficiently clear that a reasonable official would understand what he or she is doing violates that right. *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039.

 Qualified immunity protects only those officials performing *discretionary* functions. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. Thus, to establish their right to summary judgment, appellants had to establish *as a matter of law* that the functions they performed with respect to appellees' development plan were discretionary. Under feder-

al law, the precise meaning of "discretionary function" is as yet unsettled. *See Foster v. McGrail,* 844 F.Supp. 16, 23 (D.Mass.1994); *see also Horta v. Sullivan,* 4 F.3d 2, 12 (1st Cir.1993) (recognizing that Supreme Court has not clearly explained role of "discretionary functions" in qualified immunity analysis). However, Texas courts have defined the term to mean a function that requires personal deliberation, decision, and judgment on the part of an official. *See Alanis v. University of Texas Health Science Ctr.,* 843 S.W.2d 779, 790 (Tex.App.—Houston [1st Dist.] 1992, writ denied) (section 1983 claim); *City of Lancaster v. Chambers,* 883 S.W.2d 650, 654 (Tex.1994) (addressing state law claims); *see also Padgett v. Palmer,* 856 F.Supp. 1185, 1189 (S.D.Miss.1994) (considering state law distinction between discretionary and ministerial act in resolving section 1983 qualified immunity question). Such a function is to be distinguished from a "ministerial" function, which simply requires obedience to orders or the performance of a duty to which the actor has no choice. *Chambers,* 883 S.W.2d at 654; *Font v. Carr,* 867 S.W.2d 873, 879 (Tex.App.—Houston [1st Dist.] 1993, writ dism'd w.o.j.).

Although appellants contend they met their burden of conclusively establishing the discretionary nature of their actions in this case, we disagree. We have reviewed appellants' summary judgment evidence and can find nothing which indicates that the actions taken by appellants with respect to appellees' development plan were discretionary as opposed to ministerial. The Dallas Development Code, which was reproduced in full and attached to appellants' motion, does not indicate whether appellants' review of the proposed development plan was an action involving personal discretion or judgment or whether, as appellees suggest, appellants were obligated to approve the plan if it complied with the previously adopted ordinance. Nor does any other evidence submitted by appellants shed light on this issue. Because appellants failed to conclusively establish they were performing discretionary functions when reviewing the development plan at issue in this case, we conclude they have not established their right to qualified immunity as a matter of law.

Additionally, we note that the evidence offered by appellees in opposition to appellants' motion indicates that, if anything, appellants' actions with respect to the plan were ministerial and thus not subject to qualified immunity. As noted previously, the ordinance in this case provided that appellants would act "in place of" the City plan commission when reviewing a development plan submitted under the ordinance. Thus, we must look to the nature of the acts performed by the plan commission to determine the nature of appellants' actions in this case. Appellees included excerpts from William Cothrum's deposition in the summary judgment record. Cothrum, a former member of the Dallas City Council, testified that when plan commission members go through orientation, they are told that development plan approval is not discretionary. He further explained that if a development plan complies with an existing PD and conceptual plan, the plan commission is *obligated* to approve the plan.

■ Our standard for reviewing summary judgments requires us to take all evidence favorable to the nonmovant as true and to resolve any doubts in the nonmovant's favor. *See Alanis,* 843 S.W.2d at 783–90 (applying state summary judgment standard to qualified immunity claim under section 1983). Thus, in this case we must resolve all doubts in favor of appellees and take evidence favorable to them as true. Applying this standard in light of the summary judgment record before us, we conclude the trial court properly denied summary judgment to appellants based on qualified immunity. Appellants failed to conclusively establish that the functions they performed with respect to the development plan were discretionary.

For the reasons stated, we overrule appellants' sole point of error. We affirm the trial court's order denying appellants' motion for summary judgment.

DEVANY, Justice, concurring.

I write to address the appellants' motion for rehearing.

239

The standard of review of a judgment granting or denying a motion for summary judgment has been ably presented in the opinion of this Court and, therefore, need not be repeated here. It is interesting that the appellants quote from our opinion as follows:

Appellants failed to conclusively establish that the functions they performed with respect to the development plan were discretionary.

After quoting from the very heart of our opinion, which quotation explains why we affirmed the trial court's denial of summary judgment, appellants then proceed in their motion for rehearing to ignore that they submitted no summary judgment evidence upon which the trial judge could have determined that they were entitled to qualified immunity.

While the appellants' motion for summary judgment eloquently speaks of qualified immunity, they fail to understand *they have the burden* to present the *summary judgment evidence* to demonstrate that they were entitled to qualified immunity as a matter of law. Appellants' motion for summary judgment opines that the plaintiffs *failed to show* that the councilmembers acted improperly, however, appellants ignore that the burden is on the appellants because *they* filed the motion for summary judgment, not Cinemark, U.S.A., Inc., and Tinseltown Equities, Inc.

The record on appeal reveals that appellants provided no summary judgment evidence to the trial court to support appellants' position that the appellants-councilmembers were exercising their discretionary duty as councilmembers when voting on the subject matter of this lawsuit. Rule 166a(c) of the Texas Rules of Civil Procedure specifies the kind of summary judgment evidence that must be submitted. As a further example of appellants' failure is the fact that the non-movant provided an affidavit of one Willie Cothrum stating that the councilmembers function was ministerial rather than discretionary, which was left uncontroverted by appellants.

*A Texas State Court of Appeals* may not fill in the 'gaps' left by a movant in a motion for summary judgment by taking judicial notice of what the movant may believe is obvious.

On the record before us on appellants' motion for summary judgment and what was presented to the trial court, I agree that appellants' motion for rehearing should be denied.